143 N.J. Super. 432 (1976)
363 A.2d 381
DENISE ANDERSON, WILLIAM ANDERSON, ROBERT W. CASTLE, ARLENE LATKO, JOEL MYRON, ADRIAN TENHOR AND JERSEY CITY BRANCH OF NAACP, INDIVIDUALLY AND ON BEHALF OF THOSE PERSONS AND ORGANIZATIONS SIMILARLY SITUATED, PLAINTIFFS,
v.
ARTHUR J. SILLS, ATTORNEY GENERAL OF NEW JERSEY, STEVEN NESTOR, POLICE CHIEF OF JERSEY CITY, GEORGE N. BONNELLI, SHERIFF OF HUDSON COUNTY, AND GEORGE WHELAN, POLICE DIRECTOR OF JERSEY CITY, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES AND AS REPRESENTATIVES OF THE CLASS OF POLICE CHIEFS, COUNTY SHERIFFS, MUNICIPAL, COUNTY AND STATE LAW ENFORCEMENT OFFICIALS OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 26, 1976.
*434 Mr. Frank Askin and Ms. Annamay T. Sheppard for plaintiffs (Mr. Jonathan M. Hyman, of counsel).
*435 Mr. Stephen Skillman, Assistant Attorney General, for the Attorney General of New Jersey (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
Mr. Jerry Sokol for the Borough of Freehold.
Mr. Matthew J. Scola for the City of Newark
KENTZ, J.S.C.
This litigation was born in 1969 and the issues presented are still before the court for resolution. For a complete review of the history of this case and a recitation of the facts, I refer the reader to Judge Matthews' opinion in 106 N.J. Super. 545 (Ch. Div. 1969) and the Supreme Court opinion by former Chief Justice Weintraub reported in 56 N.J. 210 (1970).[1]
The matter was returned to this court on a remand from our Supreme Court for an evidentiary hearing to determine the appropriateness of certain items on forms in use by the then Attorney General of the State of New Jersey.[2] The matter is not now before the court on the evidentiary hearing *436 as directed by the Supreme Court, but rather on cross-motions. Plaintiffs have moved to compel the Supervisor of the State Police Central Security Unit to submit to depositions. The Attorney General has renewed an earlier motion to dismiss the complaint.
I will address myself to the motion of the Attorney General first. The State moves for dismissal on the grounds that the issue is moot and the complaint fails to state a cause of action because the mere existence of governmental intelligence activity does not establish a judicially cognizable claim under the First Amendment to the United States Constitution.
The State argues that the complaint is now moot because the forms in question are no longer in use. It appears from the record that on February 10, 1976 new guidelines as to the scope and functions of the Central Security Unit were issued and circulated by the Superintendent of the State Police. This document, entitled "New Jersey State Police Central Security Unit Manual," effectively supersedes prior guidelines as to the operation of the unit. The memorandum and forms which were to be the subject matter of the remand hearing have thus been effectively rescinded.
Judge Matthews expressed the basic issue in this case as follows:
Plaintiffs here seek review of and relief from only a small segment of the 43-page memorandum. The matter at issue is contained in a portion of the memorandum, printed on page 19 thereof, which is entitled "Potential Problems" and which reads as follows:
"Our State Police have been working closely with local police in various communities throughout the State in a continuing effort to keep abreast of potential civil disorder problems. In that respect, therefore, we are already familiar generally with basic problems in these communities. However, these problems change and we should never become over confident to the end that we lose sight of the cause, as well as the effect of civil disturbances. The State Police Central Security Unit has distributed Security Summary Reports (Form 421) and Security Incident Reports (Form 420) (see Appendix G) to each police department. It is necessary that these reports *437 be used routinely to inform the State Police of the situation in your community. We urge you to see that this vital intelligence is communicated to this central bureau for evaluation and dissemination." [106 N.J. Super. at 548]
The Supreme Court in its opinion commented:
The complaint revolves about a memorandum, entitled "Civil Disorders  The Role of Local, County and State Government" (herein Memorandum), prepared by the Attorney General of the State and sent to local law enforcement officials. [56 N.J. at 214-215]
Again, the Supreme Court said:
Plaintiffs say the Memorandum will result in police invasion of their First Amendment rights and build that complaint upon the content of forms 420 and 421 and the instructions for their preparation contained in "Appendix G" of the Memorandum. [at 217]
As were my colleagues before me, I am satisfied that the basic question presented is the legality of a small portion of the subject memorandum and the forms.
It is well established that questions that have become moot or academic prior to judicial scrutiny generally have been held to be an improper subject for judicial review. Oxfeld v. N.J. State Bd. of Ed., 68 N.J. 301, 303-304 (1975); In re Geraghty, 68 N.J. 209, 212-213 (1975); Sente v. Clifton Mayor and Mun. Coun., 66 N.J. 204, 206 (1974). There are two basic reasons for this doctrine. First, for reasons of judicial economy and restraint, courts will not decide cases in which the issue is hypothetical, a judgment cannot grant effective relief, or the parties do not have concrete adversity of interest. Second, it is a premise of the Anglo-American judicial system that a contest engendered by genuinely conflicting self-interests of the parties is best suited to developing all relevant material before the court. Therefore, where there is a change in circumstances so that a doubt is created concerning the immediacy of the controversy, courts will ordinarily dismiss cases as moot, regardless of the stage to which the litigation has progressed.
*438 From the outset this action has been essentially hypothetical and academic. This was pointed out by former Chief Justice Weintraub on various occasions in his opinion. Noting the manner in which the case was originally brought before the trial court, he said:
The constitutional issue was presented in a hypothetical way within an aura of surmise and speculation. [56 N.J. at 215]
The former Chief Justice again made the following comment:
It is a serious matter for the judiciary to interfere with the preventive measures devised by the executive branch of government in response to its constitutional obligation to protect all the citizens. Surely, such interference may not rest upon a hypothetical exposition of what could happen under a set of forms in the hands of an officer indifferent to the restraints upon his office. [at 225]
The court concluded that:
* * * the issue as projected by plaintiffs on the motion for summary judgment was a mere abstraction. The trial court should have denied the motion on that account. [at 226]
Our Supreme Court recently held that an academic attack based on the First Amendment should not be countenanced by the court where the issue has lost its immediacy by the passage of time and evolving circumstances. In Oxfeld v. N.J. State Bd. of Ed., supra, the court dismissed as moot a First Amendment challenge to a school regulation controlling distribution of pamphlets and leaflets on school grounds by students because the named petitioners were no longer students at the school.
I am of the opinion that this case is ripe for the application of the doctrine of mootness. Here the very subject matter of the litigation, the memorandum and forms released by the former Attorney General, have been in effect superseded and are no longer in existence. As a result there is no viable issue presently before the court. Accordingly, the complaint should be dismissed on the ground of mootness.
*439 Assuming arguendo that this case is not moot, the Attorney General then contends that the complaint should be dismissed for failure to state a cause of action.
Following the remand, the Supreme Court of the United States decided Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). This is a similar case in that it also involved governmental information gathering for the purpose of dealing with civil disorder problems. As in the case before me, the gravamen of that complaint was that the mere gathering of information had a "chilling" effect on the exercise of First Amendment rights. The court there rejected the attack upon the information-gathering activities and distinguished the First Amendment cases relied upon by plaintiffs in this action as follows:
In recent years this Court has found in a number of cases that constitutional violations may arise from the deterrent or "chilling" effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights. E.g., Baird v. State Bar of Arizona, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). In none of these cases, however, did the chilling effect arise merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual. Rather, in each of these cases, the challenged exercise of governmental power was regulatory, proscriptive, or compulsory in nature, and the complainant was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging. [408 U.S. at 11, 92 S.Ct. at 2324]
The court concluded that plaintiffs had failed to state a judicially cognizable First Amendment claim and said:
The decisions in these cases fully recognize that governmental action may be subject to constitutional challenge even though it has only an indirect effect on the exercise of First Amendment rights. At the same time, however, these decisions have in no way eroded the "established principle that to entitle a private individual to invoke *440 the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action...." Ex parte Levitt, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937). The respondents do not meet this test; their claim, simply stated, is that they disagree with the judgments made by the Executive Branch with respect to the type and amount of information the Army needs and that the very existence of the Army's data-gathering system produces a constitutionally impermissible chilling effect upon the exercise of their First Amendment rights. That alleged "chilling" effect may perhaps be seen as arising from respondents' very perception of the system as inappropriate to the Army's role under our form of government, or as arising from respondents' beliefs that it is inherently dangerous for the military to be concerned with activities in the civilian sector, or as arising from respondents' less generalized yet speculative apprehensiveness that the Army may at some future date misuse the information in some way that would cause direct harm to respondents. Allegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm; "the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." United Public Workers of America (C.I.O) v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947). [408 U.S. at 12-14, 92 S.Ct. at 2325-2326]
Lower federal courts have followed the Tatum decision under a broad variety of circumstances and have rejected challenges on First Amendment grounds to governmental information-gathering activities. See e.g., Philadelphia Yearly Meeting of Religious Society of Friends v. Tate, 519 F.2d 1335, 1337-1338 (3 Cir.1975); Fifth Avenue Peace Parade Comm. v. Gray, 480 F.2d 326, 330-333 (2 Cir.1973); Donohue v. Duling, 465 F.2d 196 (4 Cir.1972); American Civil Liberties Union v. Laird, 463 F.2d 499, 502-503 (7 Cir.1972), cert. den. 409 U.S. 1116, 93 S.Ct. 902, 34 L.Ed.2d 699 (1973).
Plaintiffs argue that the doctrine of the "law of the case" precludes this court from considering the Tatum decision. I do not believe that this doctrine is so inflexible as to prevent me from considering a controlling decision of the Supreme Court of the United States. The "law of the case" doctrine is not to be rigid and mechanical in its application. In Messinger v. Anderson, 225 U.S. 436, 444, 32 *441 S.Ct. 739, 740, 56 L.Ed. 1152 (1912), Mr. Justice Holmes, speaking for the Supreme Court, said:
* * * the phrase, "law of the case," as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power. [Emphasis supplied]
Courts have reconsidered issues previously decided where a higher court has decided the precise point in the interim. Cf. Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941). This conclusion was emphatically stated by Judge Learned Hand in Higgins v. California Prune & Apricot Growers, 3 F.2d 896 (2 Cir.1924):
[I]t is now well settled that the "law of the case" does not rigidly bind a court to its former decisions, but is only addressed to its good sense. [Citations omitted]. There can surely be no greater reason for changing our views than because the Supreme Court has directly ruled upon the precise point in the interim. [at 898]
Likewise, in Zdanok v. Glidden Company, etc., 327 F.2d 944, (2 Cir.1964), it was said:
We agree with appellant that if, before a case in a district court has proceeded to final judgment, a decision of the Supreme Court demonstrates that a ruling on which the judgment would depend was in error, no principle of the "law of the case" would warrant a failure on our part to correct the ruling. [at 951]
For the foregoing reasons I conclude that the "law of the case" doctrine does not prevent this court from determining the impact of the Tatum decision on the continuing vitality of this action.
Plaintiffs also maintain that the holding in Tatum is inapplicable because the allegations of their complaint go beyond the surveillance system which was under attack in that case. A careful review of the opinions in Tatum, as well *442 as the opinion of our own Supreme Court, leads me to the conclusion that this argument is without merit and must fall.
Plaintiffs further argue that even if their First Amendment claim falls because of Tatum, they may continue to pursue their State Constitution claims. It appears that the plaintiffs have never asserted their claims under the State Constitution. Their failure to present arguments in support of any of these claims constitutes an abandonment of those claims and they will not now be allowed to resurrect these arguments some seven years later.
Furthermore, plaintiffs cite no authority for the contention that the protections of speech under the New Jersey Constitution are different from those established by the First Amendment to the United States Constitution. The cases in New Jersey dealing with the state guarantee of free speech assume that its protections are coterminous with those of the First Amendment. Shelton College v. State Bd. of Ed., 48 N.J. 501 (1967); Kovacs v. Cooper, 135 N.J.L. 64 (Sup. Ct. 1947), aff'd 135 N.J.L. 584 (E. & A. 1947), aff'd 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1948); Hurwitz v. Boyle, 117 N.J. Super. 196 (App. Div. 1971). Accordingly, the New Jersey Constitution provides no grounds for avoiding the decision of the Supreme Court of the United States in Tantum.
For the reasons expressed herein, the complaint in this matter is dismissed as to all parties with prejudice for mootness and, alternatively, for the failure to state a cause of action.
It is unnecessary for me to address myself to the discovery motion of the plaintiffs. It being no longer viable, it is also dismissed.
NOTES
[1] A reference to the current cast of litigants is in order due to the age of this case. It appears that the complaint was amended to include the following additional plaintiffs: Ella Hobson, Ruth Drause, Dorothy Naiman, Malcolm Parker and Leonard Weinglass.

The action was originally brought against the then Attorney General, Arthur J. Sills, et als. Upon leaving office he was succeeded by George F. Kugler, Jr., who then became a participant during his tenure in office. His successor William F. Hyland, is presently a party to the action in his place and is appearing on behalf of the office of the Attorney General.
After the filing of the complaint plaintiffs were granted leave to file an amended complaint to add as defendants police officials of Newark, Jersey City, Camden, Linden and Freehold, and it appears that the complaint was so amended. By stipulation the complaint has been dismissed as to the officials of Jersey City, Camden, Linden and the Sheriff of Hudson County. As a result it appears that the only remaining viable defendants are the Attorney General of New Jersey and the police officials of Newark and Freehold.
[2] Incident Reports (Form 420);
Security Summary Reports (Form 421).