James McCUSKER, and Joseph
Palamaro, Plaintiffs,

v.

CITY OF ATLANTIC CITY, Atlantic City
Police Dep't, Lieutenant Edward
Broome, and Chief of Police Nicholas
Rifice, individually and in their official
capacity, Defendants.

Civil Action No. 95–1951 (JBS).

United States District Court,
D. New Jersey.

Dec. 16, 1996.

Louis Barbone, Jacobs & Barbone, P.A.,
Atlantic City, NJ, for Plaintiffs.

Catherine A. Tuohy, Tuohy & Tuohy, Atlantic City, NJ, for Defendants City of Atlantic City, Atlantic City Police Department and Chief Nicholas V. Rifice.

## OPINION

SIMANDLE, District Judge:

Plaintiffs, James McCusker and Joseph Palamaro, bring this civil rights action alleging that defendants Atlantic City, Atlantic City Police Department and Chief of Police

Nicholas Rifice constructively demoted them from their positions as detectives, in violation of federal and state constitutional provisions, as a result of plaintiffs' show of support for a fellow officer on trial for criminal charges. After voluntarily dismissing Counts three and four of their Complaint, plaintiffs are left with a § 1983 claim based on violations of the First and Fourteenth Amendments, a parallel claim under Article I of the New Jersey Constitution, and a breach of contract claim arising from a Collective Bargaining Agreement between Atlantic City and the Policemen's Benevolent Association Local No. 24 ("Agreement"). The court granted summary judgment in favor of defendant Lt. Edward Broome on October 3, 1995. The remaining defendants now move for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the reasons set forth below, defendants' motion will be granted.

## I. *Background*

At all times relevant to this lawsuit, plaintiffs McCusker and Palamaro were employed by the Atlantic City police department. Both served on the Atlantic County Narcotics Task Force ("task force") until May 11, 1993, when they were returned to uniform patrol. (Am. Compl. ¶ 1; Def. Br. ex. L, Personnel Order No. 34). While on the task force, plaintiffs received a three percent differential in pay because of their assignment as plain clothes detectives. (Am. Compl. ¶ 1; Agreement, Art. XXIII). When plaintiffs were returned to uniform patrol, they lost the pay increase. (*Id.* at ¶ 5).

Plaintiffs allege that they were constructively demoted in retaliation for their voluntary attendance at the trial of fellow officer Dennis Munoz, who was a criminal defendant in the case *State of New Jersey v. Dennis Munoz*, Indictment No. 92–09–0007. (Am. Compl. ¶¶ 2 and 6). plaintiff B observed the proceedings on their own time, and during breaks in the trial, they "conversed with Officer Munoz and his wife on a purely social level, offering words of moral support to Munoz and his wife." (*Id.* at ¶ 2). The trial of Officer Munoz was highly publicized and had allegedly caused division within the police department between those who supported Munoz and those who didn't. (Pl. Br.

at 11; *Id.,* ex. J, Atlantic City Press articles).

On April 29, 1993, Officer Munoz and his attorney sent to each plaintiff a form letter expressing appreciation for the moral support provided during the trial. (Am. Compl. ¶ 3). The letters were allegedly opened and read before plaintiffs received them. (*Id.*) Several days later, plaintiffs were notified that they would be transferred from the task force back to the Atlantic city Precinct. (*Id.* at ¶ 4). Plaintiffs allege that they had been quite successful on the task force and had been scheduled for future training at the time of their demotions. (McCusker Dep. at 47–8, 56). Defendant Chief Rifice claims that plaintiffs were brought back from the task force after serving for several years—longer than any other officer—so that other officers could receive training in drug interdiction. (Rifice Dep. at 38).

Defendants now seek summary judgment, arguing that plaintiffs have failed to establish their § 1983 claims as a matter of law, that defendants cannot be liable for punitive damages, and that plaintiffs have failed to exhaust their administrative remedies.

## II. *Discussion*

### A. *Summary Judgment Standard*

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding whether there is a disputed issue of material fact the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party. See *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1080–81 (3d Cir. 1996); *Kowalski v. L & F Products,* 82 F.3d 1283, 1288 (3d Cir.1996); *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they

may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Supreme Court decisions mandate that: "[w]hen the nonmoving party bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 329–30 (3d Cir.1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). However, "the nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial." *Brewer*, 72 F.3d at 330 (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### B. *Defendants' Argument that Plaintiffs' § 1983 Claims Fail*

Section 1983 provides a remedy against an individual or entity acting under the color of state law who deprives a plaintiff of a constitutional right. Plaintiffs assert this federal cause of action on the basis of a violation of their First and Fourteenth Amendment rights. They allege that their retaliatory demotions violated their First Amendment rights to freedom of association and free speech, and that the loss of the three percent pay differential resulted in a deprivation of a property interest without due process. The court will address plaintiffs' due process claims first.

#### 1. *Due Process Rights*

Plaintiffs claim that they have a property interest in their positions under the Fourteenth Amendment which was violated when they were transferred from their assignments as detectives on the Narcotics Task Force to uniform patrol. As a result of the transfer, plaintiffs lost the three percent pay differential that accompanies detective status.

To establish a property interest in a benefit protected by due process, a plaintiff must show a legitimate claim of entitlement to it. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Defendants argue that plaintiffs were not entitled to the detective pay differential because their assignment to the task force was temporary. Although McCusker and Palamaro had served four and six years, respectively, the average stay on the task force was much shorter. (Murray Dep. at 68–69). Plaintiff Palamaro admits in his deposition that he did not expect the assignment to last until his retirement. (Palamaro Dep. at 20).

Further, the Collective Bargaining Agreement speaks of the pay differential as being available to "an employee temporarily assigned to the detective Bureau or other plain clothes unit." (Pl.Br., ex. G, Agreement, Art. XXIII) (emphasis added). The Agreement goes on to specify that "[i]n the event an employee returns to uniform duty he or she shall no longer receive the differential as described herein." (*Id.*). This evidence supports the argument that plaintiffs had no legitimate expectation in their positions on the task force.

Plaintiffs respond that under New Jersey law, a member of the police department cannot be reduced in rank except for just cause. N.J.S.A. 40A: 14–147. The flaw in this argument as applied to plaintiffs, however, is that the Atlantic City Police Department does not recognize a detective as a higher ranking position than a patrolman. The Atlantic City Police Department Rules and Regulations includes an "Order of Rank" which does not distinguish a detective from a patrolman. (Def.Br.ex. G). Plaintiff Palamaro's deposition testimony further indicates that he had no expectation that detectives and patrolmen were of different ranks.

Q. You're saying, patrolman/detective. Are you saying that a detective is naturally recognized by the Atlantic City Police Department?

A. No, I'm saying patrolman and detectives are on the same line, even though the detective makes more pay.

(Palamaro Dep. at 32).

Finally, although detectives may assume different duties than patrolmen and be eligible for the three percent pay differential, employees seem to have been frequently moved between the two positions depending on the needs of the department. In fact, plaintiffs had themselves moved back and forth between detective and patrol positions in the past before being assigned to the task force. (McCusker Dep. at 10–12). When taken with the fact that the Collective Bargaining Agreement specifically grants the administration a certain amount of discretion in placing officers for the efficient running of the police department, (Agreement, Art. III), the court must conclude that plaintiff had no entitlement to the indefinite continuation of the three percent pay differential that accompanied their temporary detective assignment in the Atlantic City Police Department.

Defendants' motion for summary judgment is therefore granted with respect to plaintiffs' § 1983 claim alleging a violation of their Fourteenth Amendment due process rights.

### 2. First Amendment Rights

Plaintiffs also assert that defendants retaliated against them when they engaged in activity protected by the First Amendment. They indicate that their rights to both free association and free speech have been violated.

#### a. Plaintiffs' Association with Officer Munoz

Plaintiffs assert that they were constructively demoted in retaliation for their association with Officer Munoz during his trial. It is well established that "[g]overnment employment does not require an employee to forego the exercise of the right to freedom of association." Rode v. Dellarciprete, 845 F.2d 1195, 1204 (3d Cir.1988). Plaintiffs must, however, show that their relationship with Officer Munoz was of the type that implicates constitutional protection. This they have failed to do.

■ Plaintiffs and Officer Munoz were fellow officers and "professional friends." (McCusker Dep. at 55). The constitution simply does not protect this type of association, without more. See, e.g., Rode, 845 F.2d 1195 (public employees' relationship with brother-in-law who was also "good friend" not protected); Asko v. Bartle, 762 F.Supp. 1229, 1232 (E.D.Pa.1991) (retaliation based on friendship and professional association "may be reprehensible, but it does not impair a constitutional right.").

■ Plaintiffs do allege more than a mere relationship between themselves and Officer Munoz. They argue that by associating with him and showing their support during his trial, plaintiffs engaged in an act of association worthy of First Amendment protection.

The First Amendment does not protect against all deprivations arising out of an act of association unless the act itself—say, joining a church or political party, speaking out on matters of public interest, advocacy of reform—falls within the scope of activities eligible for inclusion within the constitutional tent.

Correa-Martinez v. Arrillaga–Belendez, 903 F.2d 49 (1st Cir.1990) (quoted with approval in Salvation Army v. Dep't of Community Affairs of State of New Jersey, 919 F.2d 183, 199 (3d Cir.1990)).

The act of association alleged by plaintiffs, namely, commenting on a matter of public concern, is addressed in the section below.

#### b. Plaintiffs' "Statement" in Attending the Trial

A public employee's claim of retaliation for engaging in protected activity is analyzed under a three-step process. Pro v. Donatucci, 81 F.3d 1283, 1288 (3d Cir.1996) (citing Watters v. City of Philadelphia, 55 F.3d 886, 892 (3d Cir.1995)). First, the plaintiff must show that the activity in question was protected. Second, plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. Finally, the employer can establish that it

would have taken the adverse employment action regardless of whether the employee had engaged in protected conduct. *Id.*

The threshold issue in determining whether plaintiffs' activity deserves protection is whether their speech was on a matter of public concern. *Swineford v. Snyder County,* 15 F.3d 1258, 1270 (3d Cir.1994). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the federal judiciary in name of the First Amendment." *Id.* at 1270–71 (citing *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983)). "The public concern inquiry is a legal one, to be determined by reference to the content, form and context of a given statement, as revealed by the whole record." *Pro,* 81 F.3d at 1288 (citation and internal quotation marks omitted).

Plaintiffs' brief asserts that "[p]laintiffs, by showing support for Dennis Munoz during his criminal trial, engaged in First Amendment protected speech. There [sic] support was a statement as to their position on a matter of public concern and as such it can not be the basis for disciplinary action." (Pl. Br. at 11). Defendants argue that the moral support shown by plaintiffs was not speech that is protected under the First Amendment since it was offered for personal reasons, not for any political or social reasons. (Def. Reply at 2).

For the purposes of this summary judgment motion, the court accepts as true plaintiffs' allegations that the trial of Officer Munoz was a highly publicized event which led to tensions within the police department. (Pl. Br. at 11–13). But, while the trial itself may have been of public concern, it does not follow that plaintiffs made a "statement" on a matter of public concern merely by attending the trial. The record as a whole does not support an inference that plaintiffs' attendance at the proceedings was a comment on the trial itself. Viewing plaintiffs' purported speech in terms of its context and content, this court determines that any statement made by plaintiffs McCusker and Palamaro in attending the trial of Officer Munoz was not on a matter of public concern.

Even in the absence of media attention, a public trial often provides the sort of context in which speech is protected. In *Pro v. Donatucci,* for instance, the Third Circuit recently determined that a public employee's activity in appearing at her supervisor's divorce proceeding pursuant to a subpoena was protected speech because "contextually, it was on a matter of public concern." 81 F.3d at 1291. This case is easily distinguished in that plaintiffs voluntarily attended Officer Munoz's trial on their own time and did not participate other than by observing and offering support during breaks. The *Pro* court, in a footnote, recognizes the distinction. *Id.* at 1291, fn. 3 ("Pro appeared in court at the divorce trial in response to a subpoena. Accordingly, we have no reason to consider what result we would have reached if she had appeared voluntarily.").

In this case, plaintiffs McCusker and Palamaro were not subpoenaed and did not testify in the Munoz trial, nor were they ever on any witness list for the trial. (McCusker Dep. at 42; Palamaro Dep. at 17). Since the plaintiffs were not ordered to attend the trial and did not give any sworn testimony, the judicial interest in having public employees respond to subpoenas and testify truthfully without fear of employer reprisal does not apply.[1]

---

1. Of course, this is not meant to suggest that plaintiffs may not have a protectible interest in access to a public trial. Public access to the courts is a highly guarded right. *See, e.g., Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984); *Publicker Industries. Inc. v. Cohen,* 733 F.2d 1059 (3d Cir. 1984). If the Chief of Police had ordered these detectives not to attend trial on their free time under penalty of disciplinary action, plaintiffs may have had a cognizable claim for interfering with their right of public access to the courts. Plaintiffs, however, do not assert a constitutional interest in access to a public trial and so it is not necessary for this court to determine the scope of that right. The court's analysis will thus be limited to First Amendment speech and association rights asserted by plaintiffs.
Even if plaintiffs' First Amendment claims were broadened to include a right of access to public trials, there has been no demonstration of an

The content of plaintiffs' speech likewise does not lead to the conclusion that it should be protected by the First Amendment. Although plaintiffs' counsel argues that by his clients' attendance at trial, they were making a statement as to their position on a hotly contested matter of public concern, this Court is left with a different impression after viewing the actual facts in the record as a whole.

The record reveals that during the trial of Officer Munoz, plaintiffs verbalized no comment on the merits of the trial, the internal affairs of the police department, or even the guilt or innocence of their fellow police officer. Indeed, plaintiffs took pains not to comment upon the trial, and not become publicly identified with Officer Munoz, by sitting on the prosecution side of the courtroom, uttering nothing that could be overheard by a member of the public, and "[keeping] a low profile during the entire time [they] were there." (McCusker Dep. at 53–4). Instead, the court finds that plaintiffs' role in the trial was personal. Their attendance signified support for a friend, not for a political or social position.

Plaintiffs' Amended Complaint points out that during the trial, they spoke with Officer Munoz and his wife "on a purely social level, offering words of moral support." (Am. Compl.2). Plaintiff McCusker's deposition testimony further indicates that the reasons for attending the trial were personal. The deposition transcript states:

Q. Or would you just drop by when you wanted to see what was going on?

A. Yes, personally, knowing Dennis Munoz, sir, it was so unlike him to be involved in something like this, I thought he must have just gone off the deep end. I went out —— out of curiosity, Number 1. And, Number 2, since he was a personal friend of mine and I knew his wife and children, I wanted to give them some moral support during this, whether he was guilty or not.

(Def. Br. ex. D, McCusker Dep. at 52).

While "it is essential that public employees be able to speak out freely on questions of

public concern without fear of retaliatory dismissal," this case does not present such a scenario. *Watters v. City of Philadelphia*, 55 F.3d 886, 891 (3d Cir.1995) (citing *Pickering v. Board of Educ.*, 391 U.S. 563, 572, 88 S.Ct. 1731, 1736, 20 L.Ed.2d 811 (1968)). Plaintiffs cannot establish to a reasonable factfinder that they were speaking on a matter of public concern. And,

when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decisions taken by a public agency allegedly in reaction to the employees' behavior.

*Connick*, 461 U.S. at 147, 103 S.Ct. at 1690. Likewise, under the facts presented herein, no inference arises that plaintiffs were expressing themselves to the public on a matter of public concern, and their First Amendment claim asserting a violation of their exercise of rights of association and speech fails.

Defendants' motion for summary judgment is therefore granted with respect to plaintiffs' § 1983 claim alleging a violation of their First Amendment association and speech rights.

### C. *Defendants' Argument that Punitive Damages May Not Be Awarded for Plaintiffs' § 1983 Claims*

Since defendants' motion for summary judgment has been granted as to Count one, plaintiffs' § 1983 claim, the arguments concerning punitive damages have become moot and will not be addressed by the court.

### D. *Plaintiffs' Remaining Causes of Action*

In addition to their § 1983 claims, plaintiffs have also asserted causes of action for violations of the New Jersey Constitution and breach of contract. This court has original jurisdiction over plaintiffs' Count one § 1983 claims only, and, as explained *supra*,

infringement or chilling of that right because plaintiffs have shown no cognizable injury. The retaliatory action they allege does not amount to

a loss of a protected interest as discussed above in the due process section of this Opinion.

those claims have been dismissed on defendants' motion for summary judgment. In cases where the claims over which a court has original jurisdiction have been dismissed, courts typically have declined to exercise supplemental jurisdiction over remaining state-law claims. *See, e.g., Ricci v. Gooberman,* 840 F.Supp. 316 (D.N.J.1993); *Bermingham v. Sony Corp. of Am.,* 820 F.Supp. 834 (D.N.J.1992), *aff'd,* 37 F.3d 1485 (3d Cir. 1994).

This court will address Count two, plaintiffs' remaining state constitutional claims, however, since they turn on the same issues as the federal constitutional claims before the court, and there is no authority for the proposition that the protections of speech under the New Jersey Constitution are any different from those established by the First Amendment. *Anderson v. Sills,* 143 N.J.Super. 432, 363 A.2d 381 (Ch.Div. 1976). For the reasons explained above, plaintiffs' claims under the New Jersey Constitution are likewise dismissed upon defendants' motion for summary judgment.

As for plaintiffs' remaining breach of contract claim, there is no federal question left to be resolved, so this court will decline to exercise supplemental jurisdiction. The breach of contract claim will be dismissed without prejudice to plaintiffs' refiling in the appropriate state court, or pursuing any other procedures available for resolution of grievances under the collective bargaining agreement.

E. *Defendants' Argument That Plaintiffs Have Failed to Exhaust Their Administrative Remedies*

Since plaintiffs' only remaining claim, for breach of contract, has been dismissed for lack of supplemental jurisdiction, the court does not reach this question.

III. *Conclusion*

For the above reasons, Counts One and Two of Plaintiffs' Amended Complaint are dismissed upon the granting of defendants' motion for summary judgment, and Count Five is dismissed without prejudice for lack of supplemental jurisdiction.