**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3845-18T2

M.R.,

     Petitioner-Appellant,

v.

HUDSON COUNTY
DEPARTMENT OF
FAMILY SERVICES,

     Respondent-Respondent.

_____

Argued September 23, 2019 – Decided October 24, 2019

Before Judges Sumners and Geiger.

On appeal from the New Jersey Department of Human Services, Division of Family Development, Agency Docket No. C253478009.

Gregory G. Diebold argued the cause for appellant (Northeast New Jersey Legal Services, attorneys; Rachael E. Funk, of counsel and on the briefs).

Francis Xavier Baker, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General; Melissa H. Raksa, Assistant

Attorney General, of counsel; Nicholas Logothetis, Deputy Attorney General, on the brief).

PER CURIAM

Appellant M.R. appeals the final agency decision of the Department of Human Services, Division of Family Development (Department) denying her application for emergency assistance in the form of temporary rental assistance through the Work First New Jersey (WFNJ) program. We reverse because we conclude there was no credible evidence to support the Department's determination that M.R. was not entitled to emergency assistance since she voluntary quit her employment as proscribed by N.J.A.C. 10:90-6.1(c)(3).

I

M.R.'s employment with Star Hospitality Group (Star Hospitality), as a housekeeper, was terminated.[1] Thus, on December 19, 2018, she applied to the Hudson County Department of Family Services (County), which administers the WFNJ program, for emergency assistance in order to pay her rent. However, because eviction proceedings against her had not yet commenced, her application could not be processed. The situation changed about two months

---

[1] The record does not indicate M.R.'s termination date.

later on February 4, 2019, when M.R. faced eviction so the County then processed her application for emergency assistance.

On March 12, the County sent M.R. a notice that her emergency assistance application was denied because her employment termination was "caused by [her own] actions." The County cited N.J.A.C. 10:90-6.1(c)(3) and imposed a six-month penalty period precluding M.R. from receiving emergency assistance. M.R. challenged the ruling by requesting a fair hearing before an Administrative Law Judge (ALJ).

At the hearing, Jared Martinez, a County employee, testified regarding his supervisor's interview of M.R., during her initial application for emergency assistance on December 19, 2018, and the efforts made to contact Star Hospitality to find out why M.R. was terminated.

Martinez revealed that after multiple unsuccessful attempts to contact Star Hospitality by phone and mail, the County eventually received two letters from the company's Director of Operations. The first, dated February 13, 2019, merely confirmed M.R.'s employment. The second, dated February 21, disclosed that Star Hospitality "is a temporary work agency," and tersely stated: "[M.R.] was released from employment due to reduced contractual business."

Neither correspondence suggested M.R. was terminated due to poor work performance.

The County admitted into evidence M.R.'s hand-written statement dated December 19, providing: "I was fired from Star Hospitality in November for work performance and the business for the [h]otel was slow."

Martinez conceded the County, even after explicit requests, was unable to obtain any information in writing from Star Hospitality about M.R.'s alleged poor work performance. Nevertheless, the County determined the sole written statement by M.R. was a sufficient basis to deny her emergency assistance.

M.R., representing herself, was asked by the ALJ about being fired due to staff reduction and work performance issues. She responded, "the only reason why they reduced the staff was because they didn't have enough money to go out to people that wasn't fully clean in the room [sic]." When the ALJ inquired if there was any additional information she wanted to share, M.R. revealed she had attended a job fair hosted by Star Hospitality where she was told she could get her job back, but was never contacted about reemployment. The record is unclear when the job fair took place, but it appears to have occurred around the time prior to M.R's eviction because the ALJ asked her if she informed the County about the job offer.

A-3845-18T2

The ALJ's three-page initial decision made seven findings of fact, including that M.R.'s termination was for both work performance and reduced business. In her legal analysis, citing N.J.A.C. 10:90-6.1(c)(3) and N.J.A.C. 10:90-4.14(b), the ALJ stated M.R. "lost her job due to her job performance" and the "cessation of employment was due to her job performance" with no mention of the reduction in Star Hospitality's business.

M.R., now represented by counsel, filed exceptions to the initial decision. The Department rejected M.R.'s contentions and denied her emergency assistance. In its final agency decision, the Department, citing only N.J.A.C. 10:90-6.1(c)(3), stated it "agree[s] [with the ALJ] that [M.R.] caused her own homelessness" and adopted the ALJ's factual findings and legal analysis.

II

Before us, M.R. maintains the Department erred in applying a definition of "voluntary cessation of employment" that included unsatisfactory job performance. She asserts this is an "expansion" of the definition of the phrase under N.J.S.A. 44:10-63.1(g) and N.J.A.C. 90-4.14(b) and -6.1(c)(3), and, thus, is plainly unreasonable and de facto rulemaking. Second, she argues the Department's determination is not supported by substantial evidence. Finally, she contends this appeal is not moot because the Department's decision impacts

her future eligibility for welfare benefits, and the issue of what constitutes voluntary cessation of employment is capable of future repetition but will likely evade review because N.J.A.C. 10:90-6.1(c)(3)'s mandated six-month penalty period would often expire before the Appellate Division can issue a decision.

Mootness

We first address the issue of mootness. The issue was seemingly raised in M.R.'s merits brief, in anticipation of the Department's argument that her appeal should be dismissed as moot because her six-month ineligibility penalty for emergency assistance under N.J.A.C. 10:90-6.1(c)(3) expired on September 11, 2019. The Department, however, did not address the issue in its merits brief opposing the appeal. Since the Department failed to argue M.R.'s appeal was moot, we need not discuss the issue. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived."). That said, for the sake of completeness we briefly address the issue.

A matter is moot when the requested decision "can have no practical effect on the existing controversy." Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)). Mootness occurs when the original issue between those who began the litigation has been resolved. Comando v. Nugiel, 436 N.J. Super.

203, 219 (App. Div. 2014) (quoting DeVesa v. Dorsey, 134 N.J. 420, 428 (1993)).  We will generally not decide a case "in which the issue is hypothetical, a judgment cannot grant effective relief, or the parties do not have concrete adversity of interest."  Cinque v. N.J. Dep't of Corr., 261 N.J. Super. 242, 243 (App. Div. 1993) (quoting Anderson v. Sills, 143 N.J. Super. 432, 437 (Ch. Div. 1976)).

However, where there are collateral legal consequences inherent in an issue to be decided, the legitimate policy concerns underlying the mootness doctrine do not restrict us in resolving an issue where the relief sought has passed.  See Bd. of Trs. v. Davis, 147 N.J. Super. 540, 543-44 (App. Div. 1977) (holding "defendant's right to appeal from the parole revocation is unaffected by his re-parole pending this appeal," because it may prejudice defendant by an "improperly founded prior parole revocation.").

Guided by these principles, M.R.'s claim is not moot because the Department's denial of emergency assistance could affect her ability to receive future emergency assistance and related pilot-program benefits.  As she points

out, there are two specific pilot programs, PHASE,[2] and HHE,[3] that have been made unavailable to applicants who have had penalties imposed against them for "non-compliance." N.J.A.C. 10:90-6.9(c)(5); 44 N.J.R. 1897(a) (July 2, 2012). In fact, the HHE program specifically indicated that a past determination that an applicant for benefits caused his or her own homelessness makes the applicant ineligible for the program. 44 N.J.R. 1897(a) (July 2, 2012) (contained in section 6.9(c)(4)).

Appeal Merits

To resolve the merits of M.R.'s appeal, we must first determine which provisions of the administrative code apply in deciding whether she was properly denied emergency assistance based upon the Department's determination that M.R. was terminated from her job due to her own voluntary conduct-poor work performance.

The Department's final agency decision cited only to N.J.A.C. 10:90-6.1(c)(3), which sets forth the guidelines for the availability of emergency assistance. The regulation, in pertinent part, provides:

---

[2] Provisional Housing -- Awaiting Supplemental Social Security Income/ Disability Insurance Eligibility.

[3] Housing Hardship Extension.

3. Emergency assistance shall not be provided to a WFNJ applicant when an actual or imminent state of homelessness exists as a direct result of the voluntary cessation of employment by the adult household member without good cause (as provided at N.J.A.C. 10:90-4.11). [Emergency assistance] shall not be provided for a period of six months to the entire household in which the recipient adult member voluntarily quits employment without good cause while receiving emergency assistance (see N.J.A.C. 10:90-4.11(b) concerning a voluntary quit).

[N.J.A.C. 10:90-6.1(c)(3) (emphasis added).]

To determine whether an applicant has voluntarily ceased employment without good cause, N.J.A.C. 10:90-6.1(c)(3) directs to N.J.A.C. 10:90-4.11, which provides in pertinent part:

(a) Good cause for . . . refusal to accept or maintain employment shall be found if:

1. The mandatory WFNJ participant is certified by DFD to be physically or mentally unable to engage in an assigned WFNJ work requirement or to cooperate with a WFNJ program requirement;

2. The conditions of employment are a risk to the WFNJ individual's health and safety (subject to review and determination by the Division of Family Development);

3. Child care is needed and not available. (See N.J.A.C. 10:90-5.2, Supportive services, child care); or

4. The mandatory WFNJ participant is unable to engage in an assigned WFNJ work requirement or to

cooperate with a WFNJ program requirement due to family violence. If noncompliance relates to family violence, the FVO Initiative procedures are to be followed (see N.J.A.C. 10:90-20).

Although the final agency decision adopted the ALJ's factual findings and conclusions of law, it made no mention of N.J.A.C. 10:90-4.14(b), which the ALJ relied upon in her initial decision. N.J.A.C. 10:90-4.14(b) provides that a recipient of WFNJ cash assistance benefits is no longer eligible when the recipient voluntarily quits employment.[4] Considering the Department chose not to mention N.J.A.C. 10:90-4.14(b), it appears the agency was remiss in not explaining that the regulation could not apply to M.R. because she was applying for emergency assistance and was not a recipient of the benefits.

Yet, neither the Department nor the ALJ cited to N.J.A.C. 10:90-1.15, which is relevant to an applicant seeking emergency assistance.[5] N.J.A.C. 10:90-1.15, titled "Voluntary quit" provides:

---

[4] N.J.A.C. 10:90-4.14(b) states "voluntary cessation of employment by recipients, without good cause, may include, but are not limited to, situations where individuals were discharged from employment due to an action or inaction on his or her part in violation of the employer's written rules or policies, or lawful job related instructions."

[5] Given that N.J.A.C. 10:90-6.1(c)(3) discusses the eligibility standard for emergency assistance and mentions N.J.A.C. 10:90-1.15 (Good cause), it would seem that N.J.A.C. 10:90-1.15 should also be referenced in N.J.A.C. 10:90-6.1(c)(3).

A-3845-18T2

> An adult applicant for WFNJ shall not be eligible for benefits when the applicant's eligibility is the result of a voluntary cessation of employment, without good cause, including situations in which an applicant has been discharged from employment due to an action or inaction on his or her part in violation of the employer's written rules or policies, or lawful job related instructions within 90 days prior to the date of application. The applicant shall be ineligible for assistance for a period of 90 days beginning with the date of quit. Other members of the adult applicant's assistance unit shall remain eligible to apply for benefits. The individual who voluntarily ceased employment shall be responsible for providing the necessary information so that a good cause determination can be made (see N.J.A.C. 10:90-4.14(b) for voluntary quit provisions for WFNJ recipients and N.J.A.C. 10:90-4.14(c) regarding good cause provisions).
>
> [(Emphasis added).]

Our decision does not turn on the failure of the Department to rely upon N.J.A.C. 10:90-1.15, nor its apparent erroneous reliance on N.J.A.C. 10:90-4.14(b) through its adoption of the ALJ's decision. In fact, the regulations share almost the exact language to define voluntary quits so the distinction is irrelevant as to the merits of determining whether M.R.'s termination was a voluntary cessation of employment.

Instead, our decision turns on the Department's application of N.J.A.C. 10:90-6.1(c)(3) in determining whether M.R. voluntarily ceased her

employment without good cause. In turn, we must decide if "there is a clear showing that [the Department's decision] is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014). (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 25 (2011)). In particular, we focus on "whether the record contains substantial evidence to support the findings on which the agency based its action[.]" A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 339 (App. Div. 2009) (citation omitted). If our review of the record leads us to conclude the agency's finding is clearly erroneous, the decision is not entitled to judicial deference and must be set aside. L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 490 (1995). We do not simply rubber stamp an agency's decision. In re Taylor, 158 N.J. 644, 657 (1999).

The record does not support the Department's conclusion that M.R. was terminated "caused by [her own] actions" – poor work performance. Star Hospitality advised the Department it was a temporary employment agency and "[M.R.] was released from employment due to reduced contractual business." The agency's conclusion that M.R.'s work performance caused her termination was limited to her ambiguous and unsophisticated written statement that she was

A-3845-18T2

"fired" because of "work performance and the business for the [h]otel was slow." Given Star Hospitality's correspondence, the record reflects M.R. was a temporary employee who was terminated because staffing was reduced due to decreased business. The cause of M.R.'s termination was not due to her actions, but Star Hospitality's business turndown and the temporary nature of her employment. The likely inference from M.R.'s written statement, as well as her testimony, is that Star Hospitality had to reduce staff and decided to retain their best workers.

The fact that M.R. was not terminated due to her performance is supported by her uncontested testimony that a representative of Star Hospitality told her at a job fair she would be rehired. The ALJ had the opportunity to evaluate M.R.'s testimony and did not find it lacking in creditability. See In re In re Taylor, 158 N.J. 644, 660 (1999) (deference given to the ALJ's factual findings which were substantially influenced by the ALJ's opportunity to hear the testimony and observe the witnesses testify) (citing State v. Locurto, 157 N.J. 463, 474 (1999)). Although M.R. testified she was not rehired, the record does not indicate it was due to her poor work performance.

Furthermore, we are mindful that M.R. was not represented by counsel at the fair hearing, and given her lack of sophistication evidenced in her testimony,

she was not aware of the relevant regulatory standards and the proofs she needed to present to obtain a favorable final agency decision.

Under the circumstances presented, the denial of emergency assistance to M.R. was arbitrary, unreasonable, and lacking fair support in the record.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3845-18T2