IN THE MATTER OF THE APPLICATION FOR THE
COMMITMENT OF Z.O.

IN THE MATTER OF THE APPLICATION FOR THE
COMMITMENT OF K.W.

IN THE MATTER OF THE APPLICATION FOR THE
COMMITMENT OF E.S.

Superior Court of New Jersey
Appellate Division

Argued September 12, 1984—Decided December 12, 1984.

Before Judges MATTHEWS, FURMAN and COHEN.

*Arthur J. Rosenberg,* Assistant Deputy Public Advocate, argued the cause for appellants (*Joseph H. Rodriquez,* Public Advocate, attorney).

*David L. Rhoads,* Assistant Mercer County Counsel, argued the cause for respondents (*Paul T. Koenig, Jr.,* Mercer County Counsel, attorney).

The opinion of the court was delivered by

RICHARD S. COHEN, J.A.D.

These consolidated appeals challenge orders committing three persons to Trenton Psychiatric Hospital ("TPH"). They assert that all of the applications for commitment should have been dismissed because the ensuing judicial hearings were held after expiration of the maximum times for hearings set forth in *R.* 4:74-4 and *N.J.S.A.* 30:4-38. We affirm the orders of commitment.

Involuntary commitment to a mental hospital is state action which deprives the subject of important liberty interests and, therefore, invokes significant due process requirements. *Humphrey v. Cady,* 405 *U.S.* 504, 92 *S.Ct.* 1048, 31 *L.Ed.*2d 394

(1972); *Jackson v. Indiana*, 406 *U.S.* 715, 92 *S.Ct.* 1845, 32 *L.Ed.*2d 435 (1972); "Developments in the Law—Civil Commitment of the Mentally Ill," 87 *Harv.L.Rev.* 1190 (1974). The patient is entitled to a prompt judicial hearing at which grounds for commitment must be established by at least clear and convincing evidence. *Addington v. Texas*, 441 *U.S.* 418, 99 *S.Ct.* 1804, 60 *L.Ed.*2d 323 (1979). Those grounds must be more than mere mental illness. *O'Connor v. Donaldson*, 422 *U.S.* 563, 95 *S.Ct.* 2486, 45 *L.Ed.*2d 396 (1975). In New Jersey, the applicant must show by clear and convincing evidence that the patient is likely to pose a danger to self or others or property and that there is a substantial risk of dangerous conduct within the reasonably foreseeable future. *In re S.L.*, 94 *N.J.* 128, 137–38 (1983).

Applications for involuntary commitment to mental hospitals are governed by *N.J.S.A.* 30:4–36 (Class "A" applications), *N.J.S.A.* 30:4–37 (Class "B" applications), *N.J.S.A.* 30:4–38 (Class "C" applications), and *N.J.S.A.* 30:4–46.1 (seven day commitments for observation).

Class "A" applications are made in cases where immediate confinement is not indicated. The patient is not hospitalized before a hearing is held on the application and unless the court decides after a hearing that commitment is warranted.

Class "B" applications are made in cases where two physicians (*N.J.S.A.* 30:4–29) certify in the application that immediate institutional restraint is necessary. If the court is so satisfied from the application, it orders temporary commitment and a hearing. The order may authorize admission and detention of the patient for no more than 20 days from the date of its entry. *N.J.S.A.* 30:4–37. In exceptional circumstances and for good cause the hearing may be adjourned for no more than 10 days. *R.* 4:74–7(c)(1).

Class "C" applications are made in cases where two physicians certify that immediate institutional restraint is necessary but find it impossible to obtain an order for temporary commit-

ment from a court. The application papers are presented to the institution and they themselves are "the warrant and justification for the temporary detention of the patient . . . ." *N.J.S.A.* 30:4–38. The papers are forwarded by the institution to the county adjuster and by the adjustor to the court, which then considers issuance of an order for temporary commitment. If issued, the order becomes the warrant and authority for temporary detention of the patient for not more than 20 days from the date of admission. *N.J.S.A.* 30:4–38; *R.* 4:74–7(c)(1).

Seven day admissions for observation are created by *N.J.S.A.* 30:4–46.1. They are initiated by the certificate of a single physician stating that the patient is suffering from mental or emotional illness and is incapable of making voluntary application for admission. The hospital management has discretion whether or not to accept the patient. If accepted, the patient must be discharged after seven days unless formally committed pursuant to other statutory proceedings. There is no judicial review of seven day commitments. In counting the statutorily defined seven days, Saturdays, Sundays and holidays are omitted. So, the period is at least nine calendar days and, even without a holiday, can be as many as eleven days.

Z.O. came to TPH on November 13, 1983, on a seven day commitment for observation. *N.J.S.A.* 30:4–46.1. On November 29, the Chief Executive Officer of TPH made a Class "C" application under *N.J.S.A.* 30:4–38 for continued confinement. On December 5, a judge reviewed the application and ordered temporary confinement and a hearing on December 15. On that day, the Public Advocate moved on behalf of Z.O. to dismiss the application on the ground that the hearing was fatally late. After denying the application and holding the hearing, the judge ordered Z.O. confined only until appropriate placement could be made. On December 23, Z.O. was discharged. He then filed this appeal.

K.W. came to TPH on a seven day commitment for observation on November 24, 1983. On December 6, the Chief Execu-

tive Officer of TPH made a Class "C" application for continued confinement. On December 8, a judge reviewed the application and ordered temporary confinement and a hearing on December 22. On that day, the Public Advocate moved on behalf of K.W. to dismiss on the ground that the hearing was fatally late. After denying the application and holding the hearing, the judge entered an order of commitment. K.W. then appealed. He has since been released from TPH.

The third matter was handled somewhat differently. On December 21, 1983, E.S. came to TPH on a seven day commitment for observation. On January 6, the Chief Executive Officer of TPH made a Class "C" application for continued confinement. On January 10, a judge reviewed the application and ordered temporary confinement and a hearing on January 26. On that day, the Public Advocate moved on behalf of E.S. to dismiss on the ground that the hearing was fatally late. The court granted the motion to dismiss but not the motion for immediate discharge. Instead, it ordered continued confinement pending the filing of a new application for commitment on the same day. Temporary confinement was continued and a hearing scheduled for February 9. After the hearing, E.S. was ordered confined only until appropriate placement could be made. She appealed. She has since been released from the hospital. Like the other two patients, she is, as far as we have been able to ascertain from counsel, fully discharged and not under any continuing obligation other than perhaps a financial debt for her care in the hospital.

All three patients argue here that their appeals have not been rendered moot by their discharge from hospitalization. They further contend that they were entitled to hearings within 20 days of first entering TPH. Since they were deprived of those timely hearings, they say, the applications for commitment should have been dismissed and they should have been discharged from TPH.

■ The first question is whether these cases have been rendered moot by the discharge from hospitalization of the three patients involved. They have not. The cases present problems that are capable of repetition and yet of evading review. The same problems may be expected to arise in other cases and to continue to divide the trial courts. *Sosna v. Iowa,* 419 *U.S.* 393, 95 *S.Ct.* 553, 42 *L.Ed.*2d 532 (1975); *In re Geraghty,* 68 *N.J.* 209 (1975); *In re J.W.,* 44 *N.J.Super.* 216 (App.Div.1957), certif. den. 24 *N.J.* 465 (1957). Moreover, the liability of these and perhaps many other patients for the cost of their care may arguably be affected by the propriety of their commitment proceedings. *N.J.S.A.* 30:4-49 *et seq.* We do not answer question of liability now, because it is not before us.

■ The statute and rule require that a hearing on a Class "C" application be held no more than 20 days after admission to the institution. Here, the filing of each of the applications was preceded by a seven day observation period authorized by *N.J.S.A.* 30:4-46.1. The patients argue that 20 days from admission means 20 days from physical entrance into the hospital. They would count the initial observation period as part of the 20 days within which a hearing has to be held.

Their reading is not unreasonable from the standpoint of language alone. It would, however, create an impossibly compressed time schedule. For that reason, the legislature could not have intended it. If the hearing had to occur within 20 days of the start of the initial observation period, the nine to eleven days of the initial period would leave insufficient time to schedule, give notice of and hold the required hearing. The statute entitles a patient and the nearest relative to written notice of the hearing. *N.J.S.A.* 30:4-41. The rule requires notice to be served at least ten days before. That would frequently be impossible under the suggested construction. In addition, it would be very difficult for appointed counsel to become familiar with the client's situation and prepare ade-

quate representation. We cannot ascribe to the legislature the intent to create a time schedule that would not work.

There is another basis for the same conclusion. The 20 day period for hearing Class "B" applications clearly runs from the date of the order for temporary commitment. *N.J.S.A.* 30:4–37; *R.* 4:74–7(c)(1). A seven day commitment for observation could precede a Class "B" application. The statute would not include it as part of the 20 day period. There is no reason why the legislature should have wanted to include the seven day observation period in the permissible 20 day period for hearings in "C" cases when it so plainly had not done so in "B" cases.

The Public Advocate argues that the extended time periods between first admissions and hearings deprived these patients of due process of law, even though the hearings were held within 20 days of the Class "C" applications. The actual elapsed periods were 28 days in one case, 32 in another, and 36 in the third.

The inferior federal courts have taken different approaches to the constitutionality of the varying time periods afforded by the states for review of involuntary commitments. *See, Kendall v. True,* 391 *F.Supp.* 413 (W.D.Ky.1975); *Doremus v. Farrell,* 407 *F.Supp.* 509 (N.D.Neb.1975); *Lynch v. Baxley,* 386 *F.Supp.* 378 (M.D.Ala.1974). The U.S. Supreme Court has spoken once on the matter. In *Briggs v. Arafeh,* 411 *U.S.* 911, 93 *S.Ct.* 1556, 36 *L.Ed.*2d 304 (1973), aff'g *Logan v. Arafeh,* 346 *F.Supp.* 1265 (D.Conn.1972), the Court summarily affirmed the decision of a three-judge district court that a state law permitting confinement for up to 45 days before a hearing was constitutional.

We are bound by *Briggs v. Arafeh* in its summary reading of the United States Constitution. *Hicks v. Miranda,* 422 *U.S.* 332, 95 *S.Ct.* 2281, 45 *L.Ed.*2d 223 (1975). A three-judge federal district court considering the validity of New Jersey's statute fixing 20 days for hearing "B" and "C" applications felt itself bound by *Briggs v. Arafeh* to uphold the statute. *Coll v.*

*Hyland,* 411 *F.Supp.* 905 (D.N.J.1976). The added problem of the seven day observation period was not considered in that case.

■ We are not aware of any state constitutional requirement more stringent than the federal standard of *Briggs v. Arafeh.* We, therefore, hold that the addition of a seven-day observation period under *N.J.S.A.* 30:4–46.1 to the twenty day period for hearing under *N.J.S.A.* 30:4–38 does not create an unconstitutionally overlong time between hospitalization and hearing.

There is another concern. It is whether the applications in these cases met New Jersey's statutory standards. In two of the cases, the seven day observation period grew to sixteen days before the "C" applications were filed. In the last case, the initial period consumed 12 days. We are unaware of any reasons justifying the delays. Moreover, we are concerned about the use of "C" applications in cases where the patient has already been hospitalized for a substantial period. "C" applications are designed for cases where it is impossible to obtain an order for temporary commitment from a court. It is that impossibility that justifies the power of a "C" application to require detention of the patient before judicial review of the application itself. "B" applications are for cases where a court order for temporary commitment can be obtained.

Our concerns are exemplified by Z.O.'s case. On November 29, 1983, 16 calendar days after admission, the "C" application was made. It should have been made a full week earlier. The two accompanying physician's certifications were in fact dated a week earlier. In each of the printed forms is a space for insertion of the grounds "upon which you conclude that there is insufficient time to obtain a temporary order of commitment." One of the certificates responds, "admitted on a seven day, which expires." The other simply replies, "C."

■■ We have no idea why the certificates were signed only at the last permissible minute, or why it took a week to file

them, or why the officials involved decided that it was impossible to obtain a temporary order from a court. There may be good explanations, but we are unaware of them. Statutory time limits on restricting the liberty of persons should not be casually disregarded. Certifications should not ordinarily be signed, as they were here, on a court day in the county seat, stating that a court order is impossible to obtain. We hold, however, that absent constitutional violation, a late "C" application should be entertained and, if otherwise facially valid, should be scheduled for prompt hearing. On balance, we believe that a court should not be obliged by minor time delay to dismiss an application for hospitalization of a person who two physicians say would be a danger to self or others outside of the hospital. The peril to the patient and the community outweighs the lesson to be taught by penalizing the delay. Official misconduct can be otherwise remedied in cases in which it occurs.

Affirmed.