**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4684-17T2
A-4699-17T2
A-0015-18T2

IN THE MATTER OF THE
CIVIL COMMITMENT OF C.M.

_____

IN THE MATTER OF THE
CIVIL COMMITMENT OF M.H.

_____

IN THE MATTER OF THE
CIVIL COMMITMENT OF C.R.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **April 15, 2019** |
| **APPELLATE DIVISION** |

Argued April 2, 2019 – Decided April 15, 2019

Before Judges Fisher, Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket Nos. CASC-561-18 and CASC-426-18; and Salem County, Docket No. SACC-168-18.

Amy B. DeNero, Assistant Deputy Public Defender, argued the cause for appellant C.M. (Joseph E. Krakora, Public Defender, attorney; Amy B. DeNero and Purificacion V. Flores, Assistant Deputy Public Defender, on the brief).

Purificacion V. Flores, Assistant Deputy Public Defender, argued the cause for appellant M.H. (Joseph E. Krakora, Public Defender, attorney; Amy B.

DeNero, Assistant Deputy Public Defender, and Purificacion V. Flores, on the brief).

Lorraine Hunter Hoilien, Deputy Public Defender, argued the cause for appellant C.R. (Joseph E. Krakora, Public Defender, attorney; Lorraine Hunter Hoilien, on the brief).

Respondent State of New Jersey has not filed a brief.

The opinion of the court was delivered by

FISHER, P.J.A.D.

Considering the important liberty interests that were at stake – and likely infringed – in these matters, we conclude the trial judge erred in refusing to vacate commitment orders solely because appellants had already been released from confinement. The existence of an unlawful commitment order is a matter of public importance and, in light of the circumstances asserted, capable of recurring; yet – if the judge's rationale for refusing to examine the legitimacy of the commitment orders is acceptable – an aggrieved individual's ability to challenge an unlawful commitment would repeatedly evade review. Even if there was available, as seems likely, no concrete remedy – other than an order declaring the wrong done – and even if, for that reason, the dispute was technically moot, we conclude the judge still should have ruled on the merits of

A-4684-17T2

appellants' motions to vacate.  And, so, we vacate the orders under review and remand for further proceedings in conformity with this opinion.

We start with a recognition that bedrock liberty interests are threatened whenever the State seeks an involuntary commitment.  That threat obligates the State to provide sufficient procedures and limits to prevent liberty restraints disproportionate to the undertaking.  See Addington v. Texas, 441 U.S. 418, 425 (1979) (declaring that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"); In re S.L., 94 N.J. 128, 137 (1983) (recognizing that "because commitment effects a great restraint on individual liberty, th[e] power of the State is constitutionally bounded").  To be sure, the individual's "deprivation[] of liberty" must be balanced against the public interest in "the need for safety and treatment" of the individual and others, but the weighing of those interests presupposes a need for strict adherence to the "clear standards and procedural safeguards that ensure that only those persons who are dangerous to themselves, others or property, are involuntarily committed to treatment."  N.J.S.A. 30:4-27.1(b).  To vindicate those interests, it is well-established that the existing procedural safeguards "must be narrowly circumscribed because of the extraordinary degree of state control it exerts over a citizen's autonomy."  S.L., 94 N.J. at 139.

With these policies and interests in mind, we observe that the process in place allows a facility to hold an individual for twenty-four hours while a screening service "provid[es] . . . treatment and conduct[s] [an] assessment." N.J.S.A. 30:4-27.5(a). If – after performing an examination – a psychiatrist finds a need for involuntary commitment, a screening certificate must be completed. N.J.S.A. 30:4-27.5(b). The facility may then "detain" the individual "involuntarily by referral from a screening service without a temporary court order," but "for no more than 72 hours from the time the screening certificate was executed." N.J.S.A. 30:4-27.9(c); accord N.J.A.C. 10:31-2.3(g); R. 4:74-7(b)(1). During that seventy-two-hour period, the facility must initiate involuntary committal court proceedings. N.J.S.A. 30:4-27.9(c).

The appellate record reveals these protections were not likely afforded. C.M. (Carol[1]) was admitted to the emergency room at Virtua Hospital in West Berlin and screened the same day; a psychiatrist, however, did not examine Carol or execute a certificate for eight days, and a judge did not enter a temporary order of commitment until the ninth day of detention. M.H. (Morgan) was brought to the emergency room at Jefferson Health Hospital in Cherry Hill

---

[1] The names we use for appellants are fictitious so as to preserve their privacy. We identify the facilities where they were held.

and screened the day of his arrival. Like Carol, Morgan was not examined and no certificate was executed for nine days; a commitment order was entered a day later. C.R. (Carl) was brought to the emergency room at Memorial Hospital in Salem County and kept involuntarily without a court order for six days. If these facts are true, appellants were involuntarily detained without a court order – and without the appointment of counsel[2] – for longer than the law allows.

These three cases were adjudicated in a similar way, with the same judge reaching the same result. The details vary only slightly. Approximately a week after entry of a temporary order of commitment, Carol filed her motion to vacate. She was released before the motion's return date, so the judge found the application moot and denied the motion. Morgan, who was still confined, unsuccessfully moved at the initial commitment hearing for a directed verdict in light of the alleged procedural violations. Before a later review hearing could occur, Morgan was discharged from the facility and his motion to vacate was denied as moot. Carl objected to commitment at an initial hearing, prompting

---

[2]  In constitutional terms, the importance of a timely temporary commitment order cannot be understated. Such an order provides for the appointment of counsel for the held individual, R. 4:74-7(c)(2), and fixes the date for an adversarial hearing for no later than twenty days from the initial commitment, R. 4:74-7(c)(1).

an adjournment. He then moved to vacate the temporary commitment order that was denied as moot because, by then, he had been discharged.

In appealing the orders denying their motions to vacate, Carol, Morgan, and Carl separately but similarly argue[3] that we should insist on a disposition on the merits because, in this setting, it is crucial – notwithstanding technical mootness – that our courts recognize, declare, and enforce the legal limitations, constitutional guarantees, and important public policies that underlie the applicable procedures. We agree.

To be sure, we recognize that civil actions become moot when, through evolving events, courts lose the power to practically effect the parties' rights or interests. See Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 484 (2008); Oxfeld v. N.J. State Bd. of Educ., 68 N.J. 301, 303 (1975); see also De Vesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring). But, despite circumstances that preclude the availability of an effective remedy, courts may still decide a case when its issues are of "great public importance," Oxfeld, 68 N.J. at 303, or are "capable of repetition," In re Conroy, 98 N.J. 321, 342 (1985),

---

[3] Carol and Morgan's appeals were consolidated; Carl's was not, but we listed his appeal so it could be considered with the others. We now consolidate all three cases so they may be decided by this single opinion.

"yet [will] evade review," <u>In re J.I.S. Indus. Serv. Co. Landfill</u>, 110 N.J. 101, 104 (1988).  Assuming the trial judge – when denying appellants' motions – properly recognized that the matters were technically moot,[4] we are nevertheless satisfied that the issues are of public importance; they are also capable of repetition while tending to evade disposition on their merits.[5]

Carol, Morgan, and Carl have shown that reasons for deciding these cases on their merits were present despite their technical mootness.  The mere

---

[4] We are mindful there may be practical impacts caused by a judge's refusal to vacate unlawful or erroneous commitment orders.  An order on the merits might be persuasive or preclusive in a subsequent civil action asserting an alleged wrongful confinement.  Such an order might also effect a later dispute about the responsibility for an unpaid bill for services during the unwarranted confinement.  <u>In re Commitment of T.J.</u>, 401 N.J. Super. 111, 118 (App. Div. 2008); <u>In re Commitment of B.L.</u>, 346 N.J. Super. 285, 292 (App. Div. 2002).  And such an order might alter future hospitalizations.  <u>See</u> N.J.S.A. 30:4-27.5(b) (recognizing that in screening a patient and assessing the proper environment for the patient, the screening should "tak[e] into account the person's prior history of hospitalization," and "[i]f a person has been admitted three times or has been an inpatient for 60 days at a short-term care facility during the preceding 12 months, consideration shall be given to not placing the person in a short-term care facility").  For present purposes, and because the record is unclear on any of these or other potential practical impacts, we assume the trial judge in these cases correctly concluded the matters were technically moot.

[5] Our courts have been particularly willing to decide technically moot matters in this and other similar settings.  <u>In re Commitment of N.N.</u>, 146 N.J. 112, 124 (1996); <u>In re Civil Commitment of U.C.</u>, 423 N.J. Super. 601, 608 (App. Div. 2012); <u>Betancourt v. Trinitas Hosp.</u>, 415 N.J. Super. 301, 311 (App. Div. 2010); <u>In re Commitment of M.C.</u>, 385 N.J. Super. 151, 155-56 (App. Div. 2006).

existence of these three separate matters – all arising around the same time, with two occurring in the same county – demonstrates the likelihood that similar alleged deprivations will occur again.[6]  And, if we were to allow their attempts to vindicate their liberty rights to be short-circuited through a broad view of mootness, courts similarly disposed would likely never reach the merits of such disputes.  In other words, to endorse the trial judge's disposition, we would be creating a scenario by which those in breach could simply discharge a wrongly held individual before the day of reckoning without consequence.  Although it is appropriate in many cases to reserve judicial resources for actual controversies, Cinque v. N.J. Dep't of Corr., 261 N.J. Super. 242, 243 (App. Div. 1993); Anderson v. Sills, 143 N.J. Super. 432, 437 (Ch. Div. 1976), important rights like those appellants would have honored through their trial court motions should not be diluted or simply ignored because their pursuit of a legal remedy could not keep pace with the ongoing circumstances.

The State's failure to respond to either the trial court motions or these appeals suggests its recognition that the temporary commitment orders should

---

[6]  The parties' submissions advise there are two other similar pending appeals in this court arising from the same vicinage.

not have been entered.[7]  Such an assumption might further suggest that we rule on the merits of appellants' motions now based on the factual assertions in the appellate record, but we think the better course is to compel the trial court's disposition of these motions on their merits in the first instance.  See Estate of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02 (App. Div. 2018).

* * *

The orders under review are vacated and the matters remanded. Appellants' motions should be scheduled and decided within thirty days of today's decision.  We retain jurisdiction to consider – on an expedited basis – any appeal that may be filed by an aggrieved party following the trial court's entry of orders that finally dispose of appellants' motions to vacate on their merits.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7]  In each case, County Counsel advised that, having reviewed the appellant's submission, the State "takes no position."

A-4684-17T2