# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4684-17T2
                A-5338-17T2
                A-5553-17T2
                A-0015-18T2
                A-5046-18T2
                A-5436-18T2
                A-5437-18T2

IN THE MATTER OF THE
COMMITMENT OF C.M.

_____

IN THE MATTER OF THE
COMMITMENT OF A.B.

_____

IN THE MATTER OF THE
COMMITMENT OF C.Y.

_____

IN THE MATTER OF THE
COMMITMENT OF C.R.

_____

IN THE MATTER OF THE
COMMITMENT OF J.G.

_____

IN THE MATTER OF THE
COMMITMENT OF J.C.

_____

IN THE MATTER OF THE
COMMITMENT OF T.P.
_____

Argued April 2, 2019 in A-4684-17 and A-0015-18 -
Decided April 15, 2019
Submitted May 21, 2019 in A-5338-17 and A-5553-17 -
Decided June 19, 2019

Re-argued telephonically May 6, 2020 –
Decided June 1, 2020

Before Judges Fisher and Rose.

On appeal from the Superior Court of New Jersey, Law
Division, Camden County, Docket Nos. L-2721-19,
L-2722-19, L-2719-19, L-2720-19, L-2723-19, and
L-2840-19.

Lorraine Hunter-Hoilien, Deputy Public Defender,
argued the cause for appellants C.M., A.B., C.Y., C.R.,
J.G., J.C., and T.P. (Joseph E. Krakora, Public
Defender, attorney; Lorraine Hunter-Hoilien, and Amy
B. Denero, Assistant Deputy Public Defender, on the
brief).

Christopher J. Riggs, Deputy Attorney General, argued
the cause for respondent New Jersey Division of Mental
Health and Addiction Services in A-5338-17[1] (Gurbir
S. Grewal, Attorney General, attorney; Melissa H.

---

[1]  In a footnote to its brief, DMHAS states that it "is only party to one of the consolidated matters," referring to A.B.'s appeal (A-5338-17), and that "because DMHAS is only party to A.B., the legal argument is focused predominantly on those facts."  DMHAS, however, has presented arguments regarding the other appeals and, in essence, has acted as a de facto amicus curiae in those other matters, for which we are appreciative.

Raksa, Assistant Attorney General, of counsel; Patrick Jhoo, Deputy Attorney General, on the brief).

Theodore E. Baker, Cumberland County Counsel, argued the cause for respondent County of Cumberland in A-5437-18 (Theodore E. Baker, Cumberland County Counsel, attorney; Theodore E. Baker, on the brief).

PER CURIAM

In these consolidated appeals, we consider whether temporary involuntary civil commitment orders may be sustained despite having been entered more than seventy-two hours after execution of screening certificates, contrary to the requirements of both statute and rule. We conclude that the due process deprivations and the failure to comply with the applicable time frames require reversal of all the temporary commitment orders in question.

Previously, we considered two groups of trial court orders that denied – on mootness grounds – motions to vacate temporary commitment orders. The first group – the appeals of C.M., A.B., C.Y., and C.R. – were decided by way of a reported opinion, In re Commitment of C.M., 458 N.J. Super. 563 (App. Div. 2019), in which we explained that although technically moot, there were compelling reasons entitling the parties to a ruling on the merits. In an unreported opinion a few months later, we reached the same conclusion in the second group, appeals filed by A.B. and C.Y. In re Commitment of A.B. and

C.Y., Nos. A-5338-17 and A-5553-17 (App. Div. June 19, 2019). We directed, in both those sets of appeals, that the remand proceedings be completed within thirty days, and we expressly welcomed expedited appeals by any party aggrieved by the anticipated trial court orders so that there would be no undue delay in the resolution of these matters. C.M., 458 N.J. Super. at 570; A.B., slip op. at 3.

Following our remand, the trial judge conducted a case management conference and determined a need for full-blown evidentiary hearings at which the committed persons, the medical personnel, and others would be expected to testify. Believing this approach was inconsistent with our mandate and after being denied reconsideration, appellants sought immediate review. We agreed that the extensive factual hearings compelled by the trial judge were unnecessary and, by order, vacated the case management order. We also directed the reassignment of these cases to another judge and ordered the completion of the remand proceedings within thirty days.

The assignment judge conferenced these cases and then – due to a need to recuse – forwarded the matter to another judge, who promptly denied appellants' motions to vacate the temporary commitment orders for reasons expressed in an oral opinion. During the course of those proceedings, another similarly situated

4

individual, J.G., moved to vacate a temporary order entered in the same vicinage; that matter was consolidated in the trial court with the others and decided the same way, leading to J.G.'s separate appeal to this court. Later still, two other similarly situated individuals, J.C., and T.P., moved to vacate temporary commitment orders; those motions were denied and they appealed as well. The appeals of all these individuals – C.M., A.B., C.Y., C.R., J.G., J.C., and T.P. – were consolidated.[2]

We need not provide additional detail about this convoluted procedural history and instead will now briefly explain why the judge's denial of appellants' motions to vacate the temporary commitment orders must be reversed.

The judge denied the motions because he concluded that the orders could have been entered had commitment been pursued in another manner. To explain, there are two ways in which involuntary commitment of these appellants could have been ordered: either through a screening service in the manner described by N.J.S.A. 30:4-27.10(a) (subsection (a)), or by an independent application as described in N.J.S.A. 30:4-27.10(b) (subsection (b)). In step with that statutory scheme, Rule 4:74-7(b) also recognizes that an action for commitment "shall be

_____

[2] For the most part we will simply refer to these individuals as "the appellants" unless specified by their initials.

commenced <u>either</u> through a screening service referral <u>or</u> upon independent applications for a temporary court order . . ."[3] (emphasis added). The temporary commitment orders here resulted from applications that were commenced with the screening service; the judge, however, denied the motion to vacate the temporary orders because the timing of their entry would have been acceptable had the independent-application process been followed. And therein lies the fallacy in the trial judge's decision.

The process described in subsection (a) was pursued in each of these cases. This process permits individuals to be held against their will for twenty-four hours while a screening service provides treatment and conducts an assessment. N.J.S.A. 30:4-27.5. Upon a psychiatrist's finding of a need for involuntary commitment, a screening certificate must be completed, N.J.S.A. 30:4-27.5(b), and thereafter the facility may involuntarily detain the individual without court order "for no more than 72 hours from the time the screen certificate was executed." N.J.S.A. 30:4-27.9(c). During that same time frame, the facility must initiate involuntary committal court proceedings. <u>Ibid.</u>

---

[3]  The <u>Rule</u> recognizes a third route – "an action for commitment to outpatient treatment may alternatively be commenced through the conversion procedure set forth in [<u>Rule</u> 4:74-7(f)(3)]" – not relevant here.

There was no compliance with critical aspects of this process in all the consolidated matters. C.M., C.Y., A.B. and J.C. were each assessed by a certified mental health screener who executed a screening document recommending involuntary inpatient psychiatric commitment; they were then held for eight, four, five, and two days, respectively, prior to the execution of the first psychiatrist's screening certificate. In total, they were held for nine, six, five, and six days, respectively, prior to the entry of temporary commitment orders. The first screening certificates concerning C.R., J.G., and T.P. were timely but those individuals were then detained for six, six, and nine days, respectively, before temporary commitment orders were entered. These facts are undisputed[4]; they demonstrate beyond question that the statutory limitations were exceeded, as the DMHAS seems to concede.[5]

---

[4] For that reason, the first motion judge's insistence upon a burdensome and costly evidentiary hearing was clearly erroneous.

[5] DMHAS recognizes the statutory time restrictions were breached, acknowledging, for example in A.B.'s case that "the screening center's initial physician's certificate was completed outside the statutory timeframe by one to two days . . ." (emphasis added). Although the DMHAS's position as to the other cases is not entirely clear, see n.1, above, its overall approach in these appeals assumes that the time frames were breached in all cases: "The question presented by this appeal is whether the hospitals' failure to meet the relevant time frames . . . precludes substantive consideration of the merits of [the] clinical need for civil commitment" (emphasis added).

The motion judge did not vacate the temporary commitment orders in light of those undisputed facts. The judge instead held that the orders could be justified because had the optional process outlined in subsection (b) been pursued, there would have been no due process violation.[6] Again, it may be true that this alternative approach would have justified the temporary commitment orders in question, but that's not what happened. Commitment was pursued under subsection (a). That was the path taken and that circumstance limits our consideration of the validity of the temporary commitment orders. We, thus, reverse because there is no doubt that the procedures clearly and unambiguously outlined in subsection (a) were exceeded in each of the cases before us.

Notwithstanding that obvious conclusion, the State expresses concern, as did the trial judge, about whether the departure from subsection (a)'s immutable constraints may be forgiven because the appellants' release would have generated a risk of harm to themselves or others. We disagree. Concern for the well-being of appellants and others does not justify an erosion of the committed

---

[6] This approach to denying relief to the appellants suggests to us the judge's recognition that the process described in subsection (a) was violated.

A-4684-17T2

person's due process rights.[7] That concern should instead cause those seeking commitment to act with the speed both required and expected by law and constitutional principles. We must not lose sight that these time frames were erected because civil commitment "constitutes a significant deprivation of liberty." Addington v. Texas, 441 U.S. 418, 425 (1979); see also In re S.L., 94 N.J. 128, 137 (1983) (recognizing that "because commitment effects a great restraint on individual liberty, th[e] power of the State is constitutionally bounded"). Our response to a violation should not be to weaken the individual's due process rights but to encourage – through enforcement of those due process rights – those who pursue commitment to honor the individual's rights.[8]

---

[7] We are mindful that we did say in In re Z.O., 197 N.J. Super. 330, 339 (App. Div. 1984), "a court should not be obliged by minor time delay to dismiss an application for hospitalization of a person who two physicians say would be a danger to self or others outside of the hospital." That, however, was preceded by our statement that the weighing of the significance of minor delays may occur "absent constitutional violation." Ibid. As we have held, restraining appellants against their will beyond the time frames allowed by legislation is a constitutional violation. In any event, we are not bound by Z.O., which examined statutory procedures since repealed and replaced by those we consider, even if it could be viewed as applying to the circumstances presented here.

[8] The legislative time frames for seeking and obtaining an involuntary civil commitment have not been shown to impose a hardship on the State or care facilities. Although the cases before us are more numerous than one would hope, they are limited to one region of the State and we assume an aberration easily

The orders under review are reversed. We remand to the trial court only for the immediate entry of orders vacating the temporary commitment orders in each of these cases.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

correctible. We reject the invitation to ignore the legislatively-compelled time frames simply because these matters were not handled with sufficient expedience.