# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3029-24

IN THE MATTER OF THE
CIVIL COMMITMENT OF
E.K.[1]

_____

Submitted February 4, 2026 – Decided March 10, 2026

Before Judges Gummer and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. MECC-000571-24.

Jennifer N. Sellitti, Public Defender, attorney for appellant E.K. (Karol Y. Ruiz, Assistant Deputy Public Defender, on the brief).

Jerome M. St. John, Essex County Counsel, attorney for respondent State of New Jersey (Thomas M. Bachman, Assistant County Counsel, on the brief).

PER CURIAM

---

[1] We use initials to identify appellant because records of civil commitment proceedings are excluded from public access under Rule 1:38-3(f)(2).

E.K. appeals from an April 15, 2025 order continuing his civil commitment at Greystone Park Psychiatric Hospital (Greystone) under a Conditional Extension Pending Placement (CEPP) pursuant to Rule 4:74-7(h)(2). Because E.K. has been discharged, we dismiss the appeal as moot.

On February 28, 2024, E.K. was civilly committed to Greystone because of psychiatric issues. The court held several review hearings after the initial commitment. At the February 18, 2025 review hearing, Dr. Lizette Garcia testified regarding E.K.'s psychiatric history, treatment and status. Dr. Garcia explained that E.K. was initially committed to Greystone because he had refused to eat, his weight had sharply declined, and he had stopped taking the medication necessary to treat his catatonic schizophrenia due to extreme side effects.

Dr. Garcia opined during the February 18 hearing that because E.K.'s medication needs had been addressed, his mental illness no longer rendered him a danger to himself, others, or property. Thus, Greystone employees were working to discharge E.K. to his brother's care in Pennsylvania, which required coordination of out-of-state aftercare services. The judge entered an order pursuant to Rule 4:74-7(h)(2) placing E.K. on CEPP status and scheduling a review hearing for April 15.

A-3029-24

A social worker assigned to E.K.'s case testified at the April 15 review hearing that Greystone had not yet effectuated its plan to discharge E.K. to his brother because a new psychiatrist had observed renewed symptoms. The assigned social worker explained E.K. had reacted to unidentified internal stimuli, and the new psychiatrist had to treat E.K.'s revived auditory hallucinations before E.K. could be discharged. The assigned social worker explained Greystone's staff felt it was "essential" to have sufficient time to address these symptoms before discharge.

Counsel for E.K. argued the availability of E.K.'s placement with his brother required immediate discharge. Counsel also asserted the change in E.K.'s treating psychiatrist was an insufficient basis to continue his commitment, despite the availability of placement, and argued aftercare services were sufficient to help E.K. "cope with any auditory hallucinations that he may have." Counsel for E.K. interposed a multitude of evidentiary objections to the judge's consideration of the assigned social worker's testimony, but the judge did not rule on them.

At the judge's request, the assigned social worker further explained the reports of E.K.'s behavior reflected he had been yelling and "calling witches from . . . his home, chasing them[,] and so forth." Greystone's medical staff

3

instructed E.K.'s assigned social worker to reach out to E.K.'s brother, who had stated similar behavior led to E.K.'s initial commitment. E.K.'s brother asked that Greystone take the necessary action to ensure the symptoms were resolved before E.K. was discharged to his care.

In an April 15, 2025 order, the judge continued E.K.'s CEPP status for thirty days and directed the new psychiatrist to furnish a report to counsel and the court as soon as possible, without making specific findings underpinning his decision. The judge scheduled a review hearing for May 13, 2025, reasoning E.K.'s new psychiatrist needed time to address the revived auditory hallucinations. Greystone discharged E.K. on May 13.[2]

E.K. argues on appeal that continuation of his CEPP status under the April 15 order was contrary to constitutional, statutory, and rule-based requirements because the judge did not find by clear and convincing evidence an appropriate placement was not immediately available or E.K. again had become dangerous to himself, others, or property. Because the issues on appeal relate only to the April 15 CEPP order and E.K. has since been discharged, we conclude the appeal is moot for the reasons that follow.

---

[2] The record does not contain E.K.'s discharge order. However, E.K.'s discharge is undisputed based on the unopposed assertion in his merits brief that Greystone discharged him on May 13.

A-3029-24

CEPP status applies to "individuals who are legally entitled to leave a mental hospital because they are not considered dangerous" but "'are incapable of competently exercising' the right to be discharged because of a diminished capacity to survive in the outside world." In re Commitment of M.G., 331 N.J. Super. 365, 378 (App. Div. 2000) (quoting In re Civ. Commitment of S.L., 94 N.J. 128, 137 (1983)). Rule 4:74-7(h)(2) provides, in pertinent part, as follows:

> At all placement review hearings the court shall inquire into and receive evidence of the patient's placement as is necessary to support the entry of an order conditionally extending the patient's hospitalization. . . . . If the court is advised at a hearing that an appropriate placement is available, it shall forthwith order such placement. If an appropriate placement becomes available during the interval between scheduled hearings, the patient may be administratively discharged to said placement.

Thus, where a person is "no longer dangerous to self" but cannot "survive in the community independently or with the help of family or friends," a judge can order the person to remain hospitalized under CEPP status until appropriate placement is arranged. In re M.C., 385 N.J. Super. 151, 162 (App. Div. 2006); see R. 4:74-7(h)(2).

Although a civil commitment for mental-health treatment implicates the constitutional rights of the person committed, see S.L., 94 N.J. at 137, well-settled legal principles also require us to avoid resolving legal issues in the

abstract and to refrain from deciding moot cases.  N.J. Tpk. Auth. v. Parsons, 3 N.J. 235, 240 (1949); In re J.S., 444 N.J. Super. 303, 313 (App. Div. 2016).  "An issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy."  Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006) (quoting N.Y. Susquehanna & W. Ry. Corp. v. State Dep't of Treasury, 6 N.J. Tax 575, 582 (Tax 1984)).

Although we may consider an issue notwithstanding its mootness if it "presents a question that is both important to the public and likely to recur," Clymer v. Summit Bancorp., 171 N.J. 57, 65-66 (2002), neither circumstance is present here.  Cf. In re Civ. Commitment of C.M., 458 N.J. Super. 563, 568-70 (App. Div. 2019) (referencing prior decisions where we addressed civil commitment matters on the merits "despite their technical mootness" because the issues were of "great public importance" and "also capable of repetition while tending to evade disposition on their merits").  The arguments on appeal relate only to E.K.'s individualized circumstances and are not of "great public importance"; nor does the record demonstrate the issues relating to E.K. are capable of repetition while evading review.  C.M., 458 N.J. Super. at 568-70.

Although we are mindful of the importance of E.K.'s right to be free from unjustified confinement, we decline to exercise our discretion to consider the

6

merits because any available remedy would be futile.  State v. Hughes, 230 N.J. Super. 223, 227 (App. Div.1989).

Any arguments not specifically addressed in this opinion lack sufficient merit to warrant extended discussion in a written opinion.  R. 2:11-3(e)(2).

Appeal dismissed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3029-24