**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3783-19

D.O., individually, and on behalf
of M.O., a minor child,

    Plaintiff-Appellant,

v.

JACKSON TOWNSHIP
BOARD OF EDUCATION,

    Defendant-Respondent.

_____

> Argued May 3, 2021 – Decided July 19, 2021
>
> Before Judges Sabatino, Currier and DeAlmeida.
>
> On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1738-16.
>
> John Rue argued the cause for appellant (John Rue & Associates, LLC, attorneys; John Rue, Donald A. Soutar, and Kenneth R. Walk, on the briefs).
>
> Katherine A. Gilfillan argued the cause for respondent (Schenck, Price, Smith & King, LLP, attorneys; Katherine A. Gilfillan, of counsel and on the brief; John D. McCarthy, on the brief).

PER CURIAM

This matter arose as a dispute over efforts by a parent, appellant D.O., to obtain from respondent, Jackson Township Board of Education ("the District" or "defendant"), certain public school records concerning her disabled son, M.O. The parent requested the records in 2015, and from August 2015 through March 2016 the District provided a series of records to her. The District certified it turned over all of the then-existing records, but the parent disagrees. She contends that some records are missing and surmises that other communications must have been documented and were not supplied.

Through administrative processes, the parent obtained from the District certain substantive educational services for her son. Nonetheless, she pursued litigation against the District in the Law Division, contending she was entitled to what is described as a "due process" hearing under 20 U.S.C. § 1415(f) concerning the sought-after alleged additional records. The Law Division rejected her claims, concluding that the applicable laws do not provide a right to such a stand-alone due process hearing in which the dispute solely concerns the turnover of school records. This appeal ensued.

For the reasons explained in this opinion, we affirm the trial court's dismissal of the parent's lawsuit. As a threshold matter, this records case appears

2

to be moot, given the trial court's finding that the District supplied the parent with all of the requested records in its files.

Even assuming the case is not moot, or that an exception to the mootness limitation is warranted, we are unpersuaded that appellant has a right to a stand-alone due process hearing where there is no related substantive dispute pending about a deprivation of educational services. Among other things, we reject appellant's argument that dicta within footnote 6 of the Supreme Court's majority opinion in Fry v. Napoleon Community Schools, 580 U.S. ___, 137 S. Ct. 743, 754 n.6 (2017), entitles her to such a due process hearing in this stand-alone setting. Appellant's remaining arguments likewise lack merit.

I.

We need not detail comprehensively the lengthy and complicated background of this case. The parties are surely familiar with the procedural and factual history, and therefore we will condense it here.

Plaintiff-appellant is the mother of M.O., a minor who is eligible for special education services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482. They reside in Jackson Township. The District is responsible for educating students who are domiciled in Jackson Township.

3

The First Due Process Complaint

In July 2015, plaintiff filed a due process complaint with the New Jersey Department of Education ("NJDOE"). The complaint was directed to the Department's Office of Special Education Programs ("OSEP"), alleging that the District failed to provide M.O. with a free and appropriate public education (known as a "FAPE") as required by the IDEA. Although it is relevant for contextual purposes, this first due process complaint is not the subject of the instant appeal.

OSEP transmitted D.O.'s first due process complaint to the Office of Administrative Law ("OAL"), where the parties each moved for summary decision.

On September 2, 2016, an Administrative Law Judge ("ALJ") granted plaintiff's motion for summary decision, upon concluding that the District had failed to provide M.O. with a FAPE between March 6, 2013, and October 20, 2015. The ALJ further concluded that plaintiff was entitled to a $600 reimbursement for an independent psychiatric evaluation of M.O. as well as

4

compensatory education for M.O. to restore him "to the educational level where he would have been but for the denial of FAPE."[1]

The Records Request

On July 13, 2015, six days after filing the first due process complaint, plaintiff sent a certified letter to Dr. Robert Cerco, Director of Special Education for the District, requesting

> a complete copy of [M.O.'s] general and special education records including but not limited to the following: report cards, progress reports, Child Study Team recommendations, attendance records, log and records of teachers and related service providers, IEPs [individualized educational plans], correspondence (including internal emails) and any other records maintained by Jackson School District and related to [M.O.'s] education.
>
> [(Emphasis omitted).]

Plaintiff's letter referenced the first due process complaint, asserting she needed the requested records in advance of the administrative hearing. In response, the

---

[1] In March 2017, plaintiff filed an enforcement action in the United States District Court and was awarded $388,837.44 in attorney fees under the fee-shifting provision of the IDEA, 20 U.S.C. § 1415(i)(3). D.O. v. Jackson Twp. Bd. of Educ., Dkt. No. 17-1581, 2019 U.S. Dist. LEXIS 72875 (D.N.J. Apr. 30, 2019). We have been advised by counsel that the parties have since settled issues in federal court relating to educational services, although the terms of the settlement do not bear on the records issues presented in this appeal.

District initially produced two sets of records on August 24 and August 25, 2015.

The Second Due Process Complaint That Is the Subject of This Appeal

On September 9, 2015, plaintiff's attorney filed a second due process complaint with OSEP, alleging that the District failed to provide a complete copy of M.O.'s student records "as required by 34 C.F.R. 300.613," an IDEA regulation. She sought "access to a complete copy" of the records, as well as a certification from defendant confirming that it has produced a complete copy "as required by 34 C.F.R. 300.613" and "N.J.A.C. 6A:32.2-1 & [6A:32-]7.5," state regulations implementing the New Jersey Pupil Records Act ("NJPRA"), N.J.S.A. 18A:36-19. The second due process complaint reserved plaintiff's "right to seek attorneys' fees and costs incurred in litigating this action, pursuant to 20 U.S.C. § 1415 [IDEA]." OSEP transmitted the matter to the OAL.

The second due process complaint neither mentioned the pending first due process complaint, nor did it allege that the District had denied M.O. a FAPE. However, it did include plaintiff's July 13, 2015 records request letter as an exhibit and referenced it in the statement of facts.[2]

---

[2] In her briefs, plaintiff claims that she "sought to consolidate" the second due process complaint with the first, but the record does not contain any evidence of the filing of such a motion or of its denial.

The District filed a "sufficiency challenge" to the second due process complaint with OSEP pursuant to N.J.A.C. 6A:14-2.7. That regulation requires requests for due process in this educational context to include the child's name, address, date of birth, school of attendance, relevant facts, the specific disputed issues, and what relief is being sought. N.J.A.C. 6A:14-2.7(c). The District sought dismissal of the second due process complaint because it "allege[d] only perceived failures by [the District] to supply student records" and "claims regarding the provision of copies of student records are not the proper subject of a due process hearing."

On September 15, 2015, ALJ Edward J. Delanoy, Jr. concluded that the second due process complaint was sufficient for the screening purposes of N.J.A.C. 6A:14-2.7(c). The ALJ explained that "[w]hile [the District] may be correct . . . that the . . . request to supply student records is not available through due process in a special education case, this is not a factor to be considered in a sufficiency challenge" but may be raised "in a summary decision motion brought during the pendency of the due process" proceedings. The matter was assigned to a different ALJ for further proceedings.

The following day, the District filed a motion to dismiss the second due process complaint, which plaintiff opposed.

A-3783-19

On March 21, 2016, ALJ John S. Kennedy granted the District's motion to dismiss the second due process complaint, which the ALJ treated as a motion for summary decision under N.J.A.C. 1:1-12.5. The ALJ found as fact that it was "undisputed . . . that the sole issue raised in the [second due process complaint] is [the District's] alleged failure to provide [plaintiff] a copy of M.O.'s student records" and that "no issue of material fact exists that precludes summary decision." According to the ALJ, the only legal issue to be decided was "whether a due process hearing may be requested to obtain copies of student records."

ALJ Kennedy concluded that "[n]either N.J.A.C. 6A:14-2.7(a)," a state regulation implementing the IDEA, "nor 34 C.F.R. 300.507," a federal regulation implementing the IDEA, "provide that a demand for providing copies of student's records may be the subject of a due process hearing" and that the relief sought "is not appropriately addressed in a due process hearing." Although ALJ Kennedy acknowledged the pendency of the first due process complaint, which involved "a disagreement between the parties regarding M.O.'s special education placement," he concluded that the first due process complaint was "a separate due process petition not currently pending before" him.

The Initial Superior Court Proceedings in Ocean County

In June 2016, plaintiff filed an Order to Show Cause and Complaint in the Law Division (the "Ocean County complaint") challenging the ALJ's dismissal of the second due process complaint. The Ocean County complaint alleged, among other things, that the court had subject matter jurisdiction "pursuant to 34 C.F.R. § 300.516(a)," an IDEA regulation, and that the District had violated plaintiff's rights under the IDEA, N.J.S.A. 18A:46-1 to -55, and related federal and state regulations including 34 C.F.R. Part 300 and N.J.A.C. 6A:14, by "failing to provide D.O. with access to M.O.'s student records."

Plaintiff sought various forms of relief in the Ocean County complaint, specifically: (1) a finding "that the OAL has jurisdiction to adjudicate cases involving failure to provide records to a parent under IDEA"; (2) an order compelling the District to provide plaintiff "with access to a complete copy of M.O.'s Student Records," including all records as they are created "until the resolution of all pending actions between the parties"; (3) an order compelling the District to certify that it has provided plaintiff with all of M.O.'s student records; and (4) attorneys' fees and costs pursuant to 20 U.S.C. § 1415.

In its answer to the Ocean County complaint, the District maintained that ALJ Kennedy's decision was correct. Among other things, the District submitted

two certifications. One came from Dr. Cerco, who certified that the District "has provided all of the student records that it has in its possession to [its] attorney . . . for the purpose of disclosure to the plaintiff." Another certification was submitted from Joanne L. Butler, Esq., who certified that her law firm (which represented the District) had already "provided an extensive number of documents concerning M.O. to plaintiff's counsel over the past year, many of which plaintiff does not acknowledge," on the following nine dates: (1) August 24, 2015; (2) August 25, 2015; (3) January 27, 2016; (4) February 1, 2016; (5) February 6, 2016; (6) February 8, 2016; (7) February 23, 2016; (8) March 18, 2016; and (9) March 30, 2016.

On September 23, 2016, Judge Arnold B. Goldman denied the Order to Show Cause, affirmed ALJ Kennedy's March 21, 2016 decision, and dismissed the Ocean County complaint for failure to exhaust administrative remedies available under N.J.A.C. 6A:3 for persons who are denied access to education records. Judge Goldman also ruled that the matter was moot because plaintiff's counsel was unable to specify what records were missing from what the District had already produced. Because the parties disagreed as to its form, the court did not enter its final order dismissing the Ocean County complaint until a month later, on November 9, 2016.

A-3783-19

In November 2016, plaintiff filed a Notice of Appeal (the "First Appeal"), No. A-1240-16, challenging the trial court's November 9, 2016 dismissal of the Ocean County complaint.

Plaintiff moved to consolidate the First Appeal with another appeal involving school records access, L.R. v. Camden City Public School District, No. A-3972-14, for purposes of oral argument. In a sua sponte global order entered a month earlier affecting numerous pending appeals with related legal issues, this court had identified the L.R. appeal as one of four cases that would be heard back-to-back concerning "accessibility to school records under the Open Public Records Act ('OPRA'), N.J.S.A. 47:1A-1 to -13, and several other related issues."

Upon considering the District's opposition to consolidating plaintiff's matter with L.R., we denied plaintiff's motion and stayed the scheduling of oral argument in the First Appeal until we decided L.R. and the three other back-to-back cases.

After we issued a published decision in L.R. granting relief to the records requestors in part and denying relief in part, the Supreme Court granted certification limited to two issues. The Court thereafter affirmed our decision

11

per curiam with an equally divided Court. See L.R. v. Camden City Pub. Sch. Dist., 452 N.J. Super. 56 (App. Div. 2017), certif. granted, 233 N.J. 219 (2018) and 233 N.J. 222 (2018), aff'd by an equally divided Court, 238 N.J. 547 (2019).

In its 3-3 decision in L.R., the Court did note "an urgent need for greater clarity in the law governing public access to educational records," specifically with respect to the NJDOE's regulations implementing NJPRA. 238 N.J. at 576 (Patterson, J., concurring).

On January 26, 2017, while the Supreme Court proceedings were pending, this court entered a global order on its own motion staying "all appeals," including plaintiff's First Appeal, "involving issues concerning accessibility to school records under [OPRA] . . . and other related issues." The District moved to vacate the stay, as it believed this particular matter "had been improperly consolidated with the OPRA litigation" since "OPRA was never an issue raised, briefed or decided." We denied the motion to vacate the stay, upon determining that "[t]he issues in this appeal could be affected by the Supreme Court's ultimate disposition" in L.R.

After the Supreme Court issued its divided ruling in L.R., we issued an order on July 19, 2019 remanding "[a]ll appeals previously subject to the global stay order . . . to the trial court for reconsideration in light of the Supreme Court's

opinions and the Appellate Division opinion, as modified." The Appellate Division's order provided that "[n]othing in this order shall interfere with the expeditious promulgation of revised administrative rules by the Department of Education, as encouraged by the Supreme Court."

The Remand to Ocean County Superior Court

The matter was revived on remand in the Law Division. In February 2020, plaintiff moved for summary judgment. Relying primarily upon dicta in footnote six of the majority opinion in Fry, 580 U.S. ___, 137 S. Ct. at 754 n.6, plaintiff sought a remand to the OAL for a due process hearing pursuant to N.J.A.C. 6A:14-2.7 to address the District's alleged failure to provide her with a complete copy of M.O.'s student records. The District cross-moved for summary judgment, contending that plaintiff's reliance upon Fry was "misguided," that she was not entitled to a due process hearing based upon a dispute solely involving student records, and that she "should instead file a petition of appeal directly with the Department of Education Bureau of Controversies and Disputes" pursuant to N.J.A.C. 6A:3-1.3(a). The summary judgment motion was heard by Judge Robert E. Brenner.

On May 13, 2020, Judge Brenner denied plaintiff's motion for summary judgment, granted the District's cross-motion for summary judgment, and dismissed plaintiff's Ocean County complaint in its entirety for the second time.

Judge Brenner agreed with ALJ Kennedy that plaintiff was not entitled to a due process hearing pursuant to N.J.A.C. 6A:14-2.7 or 34 C.F.R. 300.507 under the circumstances presented. The judge held that "[t]he mechanism that [the NJDOE] has established to challenge a district's failure to release a disabled or non-disabled student's records is a petition to the Commissioner of Education" pursuant to N.J.A.C. 6A:3-1.3(a). As we will discuss in more detail, Judge Brenner distinguished <u>Fry</u> and concluded that the dicta upon which plaintiff relied "does not create precedent applicable to the case before this [c]ourt." Judge Brenner did not reach issues of mootness.

<u>The Second (Instant) Appeal (A-3783-19)</u>

In June 2020, plaintiff filed the instant notice of appeal (the "Second Appeal")[3] challenging the trial court orders entered by Judge Goldman on November 9, 2016, and by Judge Brenner on May 13, 2020. The Attorney General declined this court's invitation to appear as an amicus curiae.

---

[3] The First Appeal is closed.

Meanwhile, recently on May 5, 2021, the NJDOE issued proposed revisions to N.J.A.C. 6A:32, the regulations addressing access to pupil records. The State Board of Education considered those proposed revisions at its June 16, 2021 meeting, but the details of this meeting have not been posted online as of the issuance of this opinion. The proposed revisions to N.J.A.C. 6A:32 are now in the midst of the public comment period, and have not yet been adopted.

## II.

## A.

We first briefly address whether the present appeal is moot. Although the District did not expressly argue mootness in its brief, the viability of the appeal is undoubtedly affected by whether there is a sufficient "live" legal controversy still remaining to warrant a merits disposition from this court.

The Judiciary "normally will not entertain cases when a controversy no longer exists and the disputed issues have become moot." De Vesa v. Dorsey, 134 N.J. 420, 428 (1993) (Pollock, J., concurring) (citing Oxfeld v. N.J. State Bd. of Educ., 68 N.J. 301, 303-04 (1975)). An issue has become moot "when [the] decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div.

15

2011)); see also Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311, 319 (App. Div. 2010) (declining to address the merits of a dispute regarding the authorization of medical treatment that had become moot).

The concept of mootness derives from the Judiciary's unique institutional role as a branch of government that only acts when a genuine dispute is placed before it. Generally, we do not render advisory decisions retrospectively opining about the legality of matters that have already been resolved. "Ordinarily, our interest in preserving judicial resources dictates that we not attempt to resolve legal issues in the abstract." Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996) (citations omitted).

That said, in limited instances, courts will address the merits of appeals that have become moot, choosing to do so "where the underlying issue is one of substantial importance, likely to reoccur but capable of evading review." Ibid. (citations omitted); see also Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 165 (1998); In re Conroy, 98 N.J. 321, 342 (1985). We tend to do so when the matter evading review poses a significant public question or affects a significant public interest. See, e.g., Guttenberg Sav. & Loan Ass'n v. Rivera, 85 N.J. 617, 622-23 (1981); Dunellen Bd. of Educ. v. Dunellen Educ.

16

Ass'n, 64 N.J. 17, 22 (1973); In re Commitment of C.M., 458 N.J. Super. 563, 568-69 (App. Div. 2019).

Here, Judge Goldman ruled nearly five years ago in September 2016 that the records dispute between plaintiff and the District was moot because plaintiff's counsel at that time was unable to specify what records were missing. The judge added that "there's no reason to doubt the veracity of an official [of the District] who says these are all the records I have."[4] The appendices on appeal contain such certifications from Dr. Cerco, the District's Director of Special Education, and defendant's attorney Butler, who certified that she provided over 1,400 documents to plaintiff's counsel in 2015 and early 2016.

Plaintiff nevertheless contends the District's turnover of records was incomplete. She suggests, for example, that the District must have records from the school nurse that concern her son and that were not supplied. Plaintiff also contends there must be additional records that were created after early 2016, while the educational services dispute was still in litigation.

Although we have serious doubts about whether there is still a live controversy before us, we decline to dismiss this appeal on grounds of mootness.

---

[4] A different attorney from plaintiff's law firm, who is not involved in the present appeal, argued the motion before Judge Goldman in September 2016.

A-3783-19

For one thing, the District's brief did not argue the point. Also, Judge Brenner's post-remand May 2020 opinion addressed the merits without commenting about mootness. In addition, there are arguably issues of public importance involved here, even though this is not an ideal procedural setting for resolving those issues. We therefore move onto those legal issues.

B.

This appeal implicates a tangle of various—and sometimes overlapping—federal and state statutes and regulations, including: (1) the IDEA, 20 U.S.C. §§ 1400-1482, and implementing regulations, 34 C.F.R. Part 300; (2) New Jersey's statutes enacted pursuant to the IDEA, N.J.S.A. 18A:46-1 to -55, and implementing regulations, N.J.A.C. 6A:14-1.1 to -10.2; (3) the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g, and implementing regulations, 34 C.F.R. Part 99; (4) the NJPRA, N.J.S.A. 18A:36-19, and implementing regulations, N.J.A.C. 6A:32-7.1 to -7.8; and (5) New Jersey's statutes pertaining to controversies and disputes arising under school laws, N.J.S.A. 18A:6-9 to -29, and implementing regulations, N.J.A.C. 6A:3-1.1 to -17.

The appeal also concerns the Supreme Court's majority opinion in Fry, upon which plaintiff relies and which Judge Brenner distinguished from the present matter.

The IDEA

The IDEA "offers States federal funds to assist in educating children with disabilities." Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 580 U.S. ___, 137 S. Ct. 988, 993 (2017). "In exchange for the funds, a State pledges to comply with a number of statutory conditions." Ibid. "Among them, the State must provide a free appropriate public education—a FAPE, for short—to all eligible children." Ibid. (citing 20 U.S.C. § 1412(a)(1)).

"A FAPE . . . includes both 'special education' and 'related services.'" Id. at 994 (quoting 20 U.S.C. § 1401(9)). "A State covered by the IDEA must provide a disabled child with such special education and related services 'in conformity with the [child's] individualized education program,' or IEP." Ibid. (alteration in original) (quoting 20 U.S.C. § 1401(9)(D)). "The IEP is the means by which special education and related services are 'tailored to the unique needs' of a particular child" and "must be drafted in compliance with a detailed set of procedures" that "emphasize collaboration among parents and educators." Ibid. (quoting Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S.

19

176, 181 (1982)). However, parents and educators do not always agree upon the content of a child's IEP. Ibid.

The IDEA requires that state and local education agencies receiving funding for special education "establish and maintain procedures in accordance with [20 U.S.C. § 1415] to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a). "The minimum procedures mandated include parental access to relevant school records, notice to parents of any proposed change in a child's educational placement, and the right to present complaints related to the child's placement or provision of free appropriate education." In re Adoption of Amends. to N.J.A.C. 6:28-2.10, 3.6 & 4.3, 305 N.J. Super. 389, 395 (App. Div. 1997).

Two of those procedural safeguards within the IDEA are implicated in this case: (1) "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child," codified at 20 U.S.C. § 1415(b)(1); and (2) "[a]n opportunity for any party to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," codified at 20 U.S.C. § 1415(b)(6)(A).

<u>A Parent's Right Under the IDEA to Examine Education Records</u>

A parent's right to examine a child's education records under the IDEA is explained in the IDEA's regulations. Initially, 34 C.F.R. § 300.501(a) reiterates the rights afforded by 20 U.S.C. § 1415(b)(1), i.e., that "[t]he parents of a child with a disability must be afforded, in accordance with the procedures of §§ 300.613 through 300.621, an opportunity to inspect and review all education records with respect to—(1) The identification, evaluation, and educational placement of the child; and (2) The provision of FAPE to the child."

34 C.F.R. § 300.613 provides more specific information regarding a state's responsibilities to ensure that parents are afforded these access rights:

> (a) Each participating agency must permit parents to inspect and review any education records relating to their children that are collected, maintained, or used by the agency under this part. The agency must comply with a request without unnecessary delay and before any meeting regarding an IEP, or any hearing pursuant to § 300.507 or §§ 300.530 through 300.532, or resolution session pursuant to § 300.510, and in no case more than 45 days after the request has been made.
>
> (b) The right to inspect and review education records under this section includes—
>
>> (1) The right to a response from the participating agency to reasonable requests for explanations and interpretation of the records;

A-3783-19

(2) The right to request that the agency provide copies of the records containing the information if failure to provide those copies would effectively prevent the parent from exercising the right to inspect and review the records; and

(3) The right to have a representative of the parent inspect and review the records.

Notably, the IDEA is conspicuously silent as to whether parents seeking access to education records have a right to a hearing if records are withheld and an access dispute arises. 34 C.F.R. § 300.619 states that parents may request a hearing, but only "to challenge information in education records to ensure that it is not inaccurate, misleading, or otherwise in violation of the privacy or other rights of the child." (Emphasis added). The regulations further provide that such "[a] hearing held under § 300.619 must be conducted according to the procedures in 34 CFR 99.22." 34 C.F.R. § 300.621.

Title 34, Part 99 contains regulations related to FERPA, 20 U.S.C. § 1232g. FERPA is a "[f]ederal law governing the privacy of student records." L.R., 238 N.J. at 561 (Patterson, J., concurring). It "prohibit[s] the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons." Gonzaga Univ. v. Doe, 536 U.S. 273, 276 (2002).

The hearing requirement set forth in the IDEA's regulations at 34 C.F.R. § 300.619 mirrors the hearing requirement set forth in FERPA's regulations at 34 C.F.R. § 99.21(a), which states that parents or eligible students are entitled to "an opportunity for a hearing to <u>challenge the content of the student's education records</u> on the grounds that the information contained in the education records is inaccurate, misleading, or in violation of the privacy rights of the student." (Emphasis added).

34 C.F.R. 99.22, incorporated by reference above in 34 C.F.R. § 300.621, states that hearings to challenge information <u>in</u> education records

> must meet, at a minimum, the following requirements:
>
> (a)  The educational agency or institution shall hold the hearing within a reasonable time after it has received the request for the hearing from the parent or eligible student.
>
> (b)  The educational agency or institution shall give the parent or eligible student notice of the date, time, and place, reasonably in advance of the hearing.
>
> (c)  The hearing may be conducted by any individual, including an official of the educational agency or institution, who does not have a direct interest in the outcome of the hearing.
>
> (d)  The educational agency or institution shall give the parent or eligible student a full and fair opportunity to present evidence relevant to the issues raised under § 99.21.  The parent or eligible student may, at their own

23

expense, be assisted or represented by one or more individuals of his or her own choice, including an attorney.

(e) The educational agency or institution shall make its decision in writing within a reasonable period of time after the hearing.

(f) The decision must be based solely on the evidence presented at the hearing, and must include a summary of the evidence and the reasons for the decision.

"If, as a result of the hearing, the agency decides that the information is inaccurate, misleading or otherwise in violation of the privacy or other rights of the child, it must amend the information accordingly and so inform the parent in writing." 34 C.F.R. § 300.620(a) (emphasis added). Otherwise, "it must inform the parent of the parent's right to place in the records the agency maintains on the child a statement commenting on the information or setting forth any reasons for disagreeing with the decision of the agency." 34 C.F.R. § 300.620(b) (emphasis added). The language contained within the IDEA regulation subparts concerning the agency's post-hearing responsibilities mirrors language in the FERPA regulations at 34 C.F.R. 99.21(b).

IDEA Complaint Procedures and Due Process Hearings

The IDEA provides that states must afford parents an impartial due process hearing "[w]henever a complaint has been received under subsection (b)(6) or (k)." 20 U.S.C. § 1415(f)(1)(A).

The first scenario warranting such a due process hearing is triggered when, pursuant to subsection (b)(6), any party files a complaint

> (A) with respect to <u>any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child</u>; and
>
> (B) which sets forth an alleged violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for presenting such a complaint under this subchapter [20 USCS §§ 1411-1419], in such time as the State law allows, except that the exceptions to the timeline described in subsection (f)(3)(D) shall apply to the timeline described in this subparagraph.
>
> [20 U.S.C. § 1415(b)(6) (emphasis added).]

A complaint filed pursuant to subsection (b)(6) must include: (1) the child's name, address, and school the child is attending; (2) "a description of the nature of the problem of the child relating to such proposed initiation or change, including facts relating to such problem"; and (3) "a proposed resolution of the

problem to the extent known and available to the party at the time." 20 U.S.C. § 1415(b)(7)(A)(i), (ii).

Next, a response to a complaint filed pursuant to subsection (b)(6) must include: (1) "an explanation of why the agency proposed or refused to take the action raised in the complaint"; (2) "a description of other options that the IEP Team considered and the reasons why those options were rejected"; (3) "a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action"; and (4) "a description of the factors that are relevant to the agency's proposal or refusal." 20 U.S.C. § 1415(c)(2)(B)(i)(I).

The second scenario warranting a due process hearing under the IDEA is triggered when, pursuant to subsection (k), any party files a complaint concerning a school district's decision "to order a change in placement for a child with a disability who violates a code of student conduct" to an "alternative educational setting." 20 U.S.C. § 1415(k) (emphasis added). See, e.g., K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ., 431 F. Supp. 3d 488, 499, 511 (D.N.J. 2019) (discussing parents' filing of a due process petition pursuant to the IDEA "to challenge [the school district's] alternative placement" decision for their son).

20 U.S.C. § 1415(f)(3)(E)(i) and (ii) limit the findings that a hearing officer may make at a due process hearing under the IDEA in the following manner:

> (i) In general. Subject to clause (ii), a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education.
>
> (ii) Procedural issues. In matters alleging a procedural violation, a hearing officer may find that a child did not receive a free appropriate public education only if the procedural inadequacies—
>
>> (I) impeded the child's right to a free appropriate public education;
>>
>> (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or
>>
>> (III) caused a deprivation of educational benefits.

20 U.S.C. § 1415(f)(3)(E)(iii) provides that "[n]othing in this subparagraph shall be construed to preclude a hearing officer from ordering a local educational agency to comply with procedural requirements under this section." That said, "[a] procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives

parents of their participation rights, or causes a deprivation of educational benefits." D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 565 (3d Cir. 2010) (citing Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 525-26 (2007)). "Thus, though it is important that a school district comply with the IDEA's procedural requirements, rather than being a goal in itself, such compliance primarily is significant because of the requirements' impact on students' and parents' substantive rights." Ibid.

"[A]t the conclusion of the administrative process, the losing party may seek redress in state or federal court." Endrew F., 137 S. Ct. at 994 (citing 20 U.S.C. § 1415(i)(2)(A)); see also Bd. of Educ. of Lenape Reg'l High Sch. Dist. v. State Dep't of Educ., Off. of Special Educ. Programs, 399 N.J. Super. 595, 605 (App. Div. 2008) (explaining that following a due process hearing, "a party 'aggrieved' by the ALJ's decision may file a civil action [either] in the Law Division of [the] Superior Court or in the United States District Court") (citations omitted). "While commonly referred to as appeals, . . . the [trial court] proceeding is not one which proceeds only upon the record compiled before the agency, but one which affords the opportunity for the creation of a broader record for analysis by the trier of fact." Hasbrouck Heights Bd. of Educ. v. W.J., 358 N.J. Super. 8, 12 (App. Div. 2003).

Of particular note for the present case, "a court 'may award reasonable attorneys' fees as part of the costs' to parents who prevail in an action" brought pursuant to the IDEA. Arlington Cent. Sch. Dist. Bd. v. Murphy, 548 U.S. 291, 293 (2006) (quoting 20 U.S.C. § 1415(i)(3)(B)).

New Jersey Statutes and Regulations Implementing the IDEA

The IDEA mandates that states receiving funding pursuant to it shall "ensure that any State rules, regulations, and policies relating to [the IDEA] . . . conform to the purposes of [the IDEA]." 20 U.S.C. § 1407(a)(1). "New Jersey has adopted a statute and regulations to comply with IDEA." Lenape Reg'l High Sch. Dist., 399 N.J. Super. at 600. The state's "statutory and regulatory scheme is intended to reflect the federal standard." In re N.J.A.C. 6:28-2.10, 305 N.J. Super. at 396. That said, "[t]he New Jersey response to the requirements of the IDEA is primarily regulatory." Baer v. Klagholz, 339 N.J. Super. 168, 189 (App. Div. 2001).

Right to Examine Education Records

The implementing state statute, N.J.S.A. 18A:46-1 to -55, does not address a parent's access rights to a child's education records under the IDEA. While the implementing regulations contain a subchapter addressing student records, this subchapter cross-references and incorporates by reference the

29

implementing regulations for the NJPRA at N.J.A.C. 6A:32-7. Thus, in order to understand how New Jersey grants a parent access to a disabled child's education records consistent with the IDEA's requirement that a parent is entitled to that procedural safeguard, it is necessary to review the NJPRA and its implementing regulations.

Specifically, N.J.A.C. 6A:14-2.9, part of the regulations promulgated pursuant to the state special education statute, provides:

> (a) All student records shall be maintained according to N.J.A.C. 6A:32-7.
>
> (b) The parent, adult student, or designated representative shall be permitted to inspect and review the contents of the student's records maintained by the district board of education pursuant to N.J.A.C. 6A:32-7 without unnecessary delay and before any meeting regarding the IEP.

Consistent with the IDEA, the NJPRA affords parents full access to their children's "pupil" records, but also protects the "reasonable privacy" interests of parents and students by requiring districts to securely maintain those records. N.J.S.A. 18A:36-19; see also N.J.A.C. 6A:32-7.1.[5] The NJPRA's implementing regulations, in their current form, broadly define "student record" as

---

[5] While the IDEA labels the records at issue as "education records," the NJPRA and its regulations use the labels "pupil records" and "student records."

information related to an individual student gathered within or outside the school district and maintained within the school district, regardless of the physical form in which it is maintained. Essential in this definition is the idea that any information that is maintained for the purpose of second-party review is considered a student record. Therefore, information recorded by certified school personnel solely as a memory aid and not for the use of a second party is excluded from this definition.

[N.J.A.C. 6A:32-2.1.]

N.J.A.C. 6A:32-7.5(a) limits access to student records to "authorized organizations, agencies or persons as defined in this section," including parents. N.J.A.C. 6A:32-7.5(e).

Although the IDEA's regulations provide that parents may request a hearing to challenge information in education records "to ensure that it is not inaccurate, misleading, or otherwise in violation of the privacy or other rights of the child," 34 C.F.R. § 300.619, the NJPRA's regulations offer a somewhat more expansive right to a hearing. Specifically, N.J.A.C. 6A:32-7.7(a) provides that "[s]tudent records are subject to challenge by parents and adult students on grounds of inaccuracy, irrelevancy, impermissive disclosure, inclusion of improper information <u>or denial of access</u> to organizations, agencies, and persons." (Emphasis added).

N.J.A.C. 6A:32-7.7(b) explains the appeal process as follows:

To request a change in the record or to request a stay of disclosure pending final determination of the challenged procedure, a parent or adult student shall notify in writing the chief school administrator of the specific issues relating to the student record. Within 10 school days of notification, the chief school administrator or his or her designee shall notify the parent or adult student of the school district's decision. If the school district disagrees with the request, the chief school administrator or his or her designee shall meet with the parent or adult student to resolve the issues set forth in the appeal. If the matter is not satisfactorily resolved, the parent or adult student has 10 school days to appeal this decision to the district board of education. If appeal is made to the district board of education, a decision shall be rendered within 20 school days. The decision of the district board of education <u>may be appealed to the Commissioner pursuant to N.J.S.A. 18A:6-9 and N.J.A.C. 6A:3, Controversies and Disputes</u>. At all stages of the appeal process, the parent or adult student shall be afforded a full and fair opportunity to present evidence relevant to the issue. A record of the appeal proceedings and outcome shall be made a part of the student record with copies made available to the parent or adult student.

[(Emphasis added).]

N.J.A.C. 6A:32-7.7(c) states that "[a]ppeals relating to student records of students with disabilities shall be processed in accordance with the requirements of (b) above." Thus, by appealing the district board of education's decision to the Commissioner of Education pursuant to N.J.S.A. 18A:6-9 and N.J.A.C. 6A:3, parents of students with disabilities challenging a denial of access to a

child's education record are provided certain rights to a hearing, albeit not what the IDEA calls a "due process hearing."

N.J.S.A. 18A:6-9 grants the Commissioner of Education "jurisdiction to hear and determine, without cost to the parties, all controversies and disputes arising under the school laws." The appeal process is initiated via the filing of a petition of appeal with the Commissioner of Education, Office of Controversies and Disputes, within ninety days of the district board of education's decision. N.J.A.C. 6A:3-1.3, 1.4.

Once the district board of education files its answer to the petition in accordance with N.J.A.C. 6A:3-1.5, then "the Commissioner may either retain the matter for hearing directly and individually, designate an assistant commissioner to hear and decide the matter pursuant to N.J.S.A. 18A:4-33 and 34, or transmit the matter for hearing before the OAL." N.J.A.C. 6A:3-1.11. Thereafter, the final determination is made by the Commissioner in writing, and it may be appealed to the Appellate Division. N.J.A.C. 6A:3-1.14.

Complaint Procedures and Due Process Hearings

Consistent with the IDEA, the New Jersey special education statute, at N.J.S.A. 18A:46-1.1, limits the scope of a due process hearing held pursuant to the IDEA, Title 18A, Chapter 46, or the implementing regulations, to "the

identification, evaluation, reevaluation, classification, educational placement, the provision of a [FAPE], or disciplinary action, of a child with a disability."

The implementing regulations reiterate that limitation. N.J.A.C. 6A:14-2.7(a) states that a due process hearing may be requested on behalf of students age three through twenty-one "when there is a disagreement regarding identification, evaluation, reevaluation, classification, educational placement, the provision of a [FAPE], or disciplinary action." Additionally, "the district board of education . . . may request a due process hearing when the district board of education is unable to obtain required consent to conduct an initial evaluation or a reevaluation, or to release student records." N.J.A.C. 6A:14-2.7(b).

## C.

With this background in mind, we turn to the core issue of this appeal: whether the IDEA or state law provide a parent with a right to a "due process hearing" when the parent's dispute with the school district solely concerns whether the district failed to provide that parent with access to the child's student records. Having considered the parties' contentions in light of the applicable laws, we concur with Judge Brenner that the answer is no. We do so substantially for the sound reasons set forth in his May 13, 2020 oral opinion. We add a few comments by way of amplification.

Nothing in the text of the IDEA grants a parent a right to a due process hearing if the complaint only alleges a denial of access to a child's education records. As we have already discussed, the right to such a hearing prescribed by the IDEA is confined to a right to "challenge information in education records to ensure that it is not inaccurate, misleading, or otherwise in violation of the privacy or other rights of the child." 34 C.F.R. § 300.619 (emphasis added). The federal provisions contain no such hearing right for a situation where the parent argues, as here, that a school district withheld requested school records.

As for state education law, nothing in N.J.A.C. 6A:14-2.7(a) or (b) grants a parent the right to an IDEA due process hearing in a situation of allegedly withheld records. The implementing regulations maintain the emphasis on a FAPE and limit the scope of the due process hearing consistent with the IDEA. This is illustrated by N.J.A.C. 6A:14-2.7(k), which limits the appropriate grounds for decisions made by ALJs in such matters:

> The decision made by an administrative law judge in a due process hearing shall be made on substantive grounds based on a determination of whether the child received a free, appropriate public education (FAPE). In matters alleging a procedural violation, an administrative law judge may decide that a child did not receive a FAPE only if the procedural inadequacies:
>
> 1. Impeded the child's right to a FAPE;

2. Significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of FAPE to the child; or

3. Caused a deprivation of educational benefits.

[(Emphasis added).]

None of these three scenarios is presented here in this "stand-alone" context. The substantive dispute between the parent and the District concerning M.O.'s FAPE and the educational services he needs has concluded. The dispute before us only concerns an alleged failure to turn over additional records surmised to be in the District's possession. There is no provision in the pertinent educational statutes and regulations that confer a right to a due process hearing—at which, notably, attorneys' fees may be recovered by a prevailing parent—for such a records-only dispute.

As Judge Brenner correctly pointed out, the appropriate pathway for resolving such a "denial-of-access" dispute under the education laws is a petition to the Commissioner of Education's Office of Controversies and Disputes pursuant to N.J.S.A. 18A:6-9, N.J.A.C. 6A:3, and N.J.A.C. 6A:32-7.7(c). The Commissioner may, in turn, choose to refer the records access dispute to the OAL for a hearing, or, alternatively, to designate an Assistant Commissioner to hear and decide the matter. In either instance, the hearing conducted would not

be a "due process hearing" prescribed by the IDEA. Importantly, the hearing would not authorize fee-shifting under the IDEA if the parent prevailed.

The U.S. Supreme Court's Opinion in Fry

We agree with Judge Brenner's ruling that footnote six of the United States Supreme Court's majority opinion in Fry does not confer upon D.O. a right to a due process hearing in this stand-alone records denial setting.

The petitioner in Fry was a child with a severe form of cerebral palsy. 580 U.S. ___, 137 S. Ct. at 750. Her parents sued her school districts in federal court after they refused to allow her trained service dog to accompany her to kindergarten. 580 U.S. ___, 137 S. Ct. at 751-52. The lawsuit alleged violations of Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act, more specifically that the districts denied the child equal access to the school and its programs, refused to reasonably accommodate her use of a service animal, and committed disability discrimination. 580 U.S. ___, 137 S. Ct. at 752. The lawsuit did not expressly allege a denial of FAPE under the IDEA.

The District Court granted the school districts' motion to dismiss the lawsuit upon concluding that 20 U.S.C. § 1415(l) required petitioners "to first exhaust the IDEA's administrative procedures" and "[a] divided panel of the

A-3783-19

Court of Appeals for the Sixth Circuit affirmed." Ibid. The majority held that the IDEA's exhaustion provision applied when "the injuries [alleged in a suit] relate to the specific substantive protections of the IDEA," meaning "that exhaustion is necessary whenever 'the genesis and the manifestations' of the complained-of harms were 'educational' in nature." Ibid. (alteration in original) (quoting Fry v. Napoleon Cmty. Schs., 788 F.3d 622, 625 (6th Cir. 2015)). The dissenting judge disagreed and reasoned that the IDEA's exhaustion provision did not apply because the petitioners "'did not allege the denial of a FAPE' or 'seek to modify [the child's] IEP in any way.'" Ibid. (quoting Fry, 788 F.3d at 634) (Daughtrey, J., dissenting).

The Supreme Court majority agreed with the dissenting judge and concluded that "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—what the Act calls a 'free appropriate public education,'" or FAPE. 580 U.S. ___, 137 S. Ct. at 748. In so concluding, the Court held that "the only 'relief' the IDEA makes 'available' is relief for the denial of a FAPE." 580 U.S. ___, 137 S. Ct. at 755. It also held "that in determining whether a suit indeed 'seeks' relief for a such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." 580 U.S. ___, 137 S. Ct. at 752.

A-3783-19

In its analysis, the Court emphasized "the primacy of a FAPE in the [IDEA's] statutory scheme" and reasoned that "[t]he only relief that an IDEA officer can give—hence the thing a plaintiff must seek in order to trigger § 1415(l)'s exhaustion rule—is relief for the denial of a FAPE." 580 U.S. ___, 137 S. Ct. at 753. In that regard, it quoted 20 U.S.C. § 1415(f)(3)(E)(i), which provides that "any decision by a hearing officer on a request for substantive relief 'shall' be 'based on a determination of whether the child received a free appropriate public education.'" 580 U.S. ___, 137 S. Ct. at 754. Then, in the footnote upon which plaintiff relies in this matter, the Court majority stated:

> Without finding the denial of a FAPE, a hearing officer may do nothing more than order a school district to comply with the Act's various procedural requirements, see § 1415(f)(3)(E)(iii)—for example, by allowing parents to "examine all records" relating to their child, § 1415(b)(1).

> [580 U.S. ___, 137 S. Ct. at 754 n.6.]

Ultimately, the Court remanded the matter for a determination as to "whether the gravamen of [the] complaint charges, and seeks relief for, the denial of a FAPE." 580 U.S. ___, 137 S. Ct. at 758-59 (emphasis added). The Court instructed that the remand court "should establish whether (or to what extent) the [petitioners] invoked the IDEA's dispute resolution process before bringing [the federal lawsuit]" since that could "serve as evidence that the

39

gravamen of [the] later suit is the denial of a FAPE, even though that does not appear on the face of [the] complaint."  580 U.S. ___, 137 S. Ct. at 758-59.

Contrary to plaintiff's contention, footnote six does not create an independent right to a due process hearing under the IDEA when a parent wishes to pursue a stand-alone denial-of-access claim.  Had Congress intended to grant such a right, and to require states to provide said right in order to be eligible for federal funding, it would have stated so in the IDEA.  See Arlington, 548 U.S. at 296 ("[W]hen Congress attaches conditions to a State's acceptance of federal funds, the conditions must be set out 'unambiguously.'") (citations omitted). Congress did not do so.

As we have already noted, 20 U.S.C. § 1415(b) of the IDEA requires, as a procedural matter, "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child."  In a different subsection, 20 U.S.C. § 1415(f), the IDEA addresses when due process hearings are warranted, the limitations on the nature of those hearings, and the limitations on the scope of the hearing officer's decision.  After explaining what specific findings a hearing officer is permitted to make during a due process hearing on the issue of whether the child received a FAPE at 20 U.S.C. § 1415(f)(3)(E)(i) and (ii), 20 U.S.C. § 1415(f)(3)(E)(iii) states that "[n]othing in this subparagraph shall

be construed to preclude a hearing officer from ordering a local educational agency to comply with procedural requirements under this section."

Although 20 U.S.C. § 1415(f)(3)(E)(iii) does not "preclude a hearing officer from <u>ordering</u> a local education agency to comply with procedural requirements" under the IDEA (which would include an opportunity for parents of disabled children to examine their children's education records), it does <u>not</u> <u>create an independent right to a due process hearing</u> when a parent wishes to pursue a stand-alone denial-of-access claim. Instead, this subsection is speaking to what a hearing officer may or may not do <u>while</u> conducting a due process hearing held pursuant to 20 U.S.C. § 1415(f)(1)(A).

"The review to which an aggrieved party is entitled under IDEA is . . . defined by the terms of the statute itself." <u>Hasbrouck Heights</u>, 358 N.J. Super. at 11. Pursuant to 20 U.S.C. § 1415(f)(1)(A), the IDEA's plain language provides that a due process hearing is warranted only when "a complaint has been received under subsection (b)(6) or (k)," i.e., regarding "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE]," 20 U.S.C. § 1415(b)(6), or regarding a school district's decision "to order a change in placement for a child with a disability who

41

violates a code of student conduct" to an "alternative educational setting." 20 U.S.C. § 1415(k).

Thus, read in context with 20 U.S.C. § 1415 as a whole, 20 U.S.C. § 1415(f)(3)(E)(iii) signifies that at a due process hearing conducted pursuant to either of the two scenarios enumerated in 20 U.S.C. § 1415(f)(1)(A), a hearing officer may—as an allied remedy—order a school district to allow a parent to examine a child's education records even if the hearing officer does not find that the district has deprived that child of a FAPE. That interpretation is consistent with footnote six of Fry. 580 U.S. ___, 137 S. Ct. at 754 n.6.

D.S. v. Bayonne

The above interpretation is also consistent with the Third Circuit Court of Appeals' observation in 2010 in D.S. v. Bayonne Board of Education, 602 F.3d at 565 that "[a] procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." (Citations omitted).

As ALJ Kennedy and both Superior Court judges rightly concluded, plaintiff was not entitled to a stand-alone IDEA due process hearing with respect to her free-standing records request. Her second due process complaint failed

to allege that the procedural violation she complained of resulted "in a loss of educational opportunity for the student, seriously deprive[d] parents of their participation rights, or cause[d] a deprivation of educational benefits." Ibid.

Tellingly, plaintiff has not identified a single published opinion that has adopted her argument that footnote six of Fry entitles a parent who files a complaint against a school district alleging only a denial of access to records—without any substantive claim of a denial of a FAPE—to a due process hearing under the IDEA.

We understand why, as a policy matter, a parent or a disability rights advocacy organization might wish to have statutes and regulations adopted that create such an entitlement to a due process hearing in this stand-alone context, along with the prospect of fee-shifting that might attract counsel to take on such cases. We also do not encourage school districts to arbitrarily or unfairly withhold student records from parents who request them. But the education laws, as presently written, do not provide for such an entitlement to a due process hearing.[6] The sole avenue (albeit without fee-shifting) is a petition to

---

[6] We do not address here whether other statutes outside of the education laws, such as OPRA, N.J.S.A. 47:1A-1 to -13, provide alternative effective access rights and remedies. See L.R., 238 N.J. at 549. We also do not foreclose the Commissioner from addressing the issue in the ongoing rulemaking process that is underway.

the Commissioner's Office of Controversies and Disputes, an option which plaintiff did not avail herself of here.

We have fully considered all of the remaining points raised on appeal, and have found them to lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3783-19